**Leroy WINDFIELD, Plaintiff–Appellant,**

v.

**GROEN DIVISION, DOVER CORPORATION, Defendant–Appellee.**

No. 88–4830.

United States Court of Appeals, Fifth Circuit.

Dec. 19, 1989.

---

Walter Kamiat, David Silberman, Laurence Gold, Washington, D.C., Cooper, Mitch, Crawford, Kuykendall & Whatly, Jay Smith, Birmingham, Ala., Roger K. Doolittle, Jackson, Miss., Carl Frankel, Five Gateway Center, Pittsburgh, Pa., for plaintiff-appellant.

R. Pepper Crutcher, Jr., Kenneth E. Milam, Jackson, Miss., for defendant-appellee.

Before GEE and JONES, Circuit Judges, and HUNTER,[1] District Judge.

EDITH H. JONES, Circuit Judge:

Leroy Windfield, appellant, sued his former employer, Groen Division, Dover Corporation ("Groen") for breach of contract, breach of implied contract, promissory estoppel, and fraud in Mississippi state court. Groen removed the suit to federal court on the basis of diversity of citizenship and then moved to dismiss because Windfield's state law claims were allegedly preempted by the unfair labor practice provisions of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), 159(c) ("NLRA"). The court held that the NLRB had exclusive jurisdiction over Windfield's claims and granted Groen's motion to dismiss the suit.[2] Windfield appeals. We reverse.

I.

Because the appeal arises from a dismissal for lack of jurisdiction, Fed.R.Civ.P. 12(b)(1), we must accept Windfield's recitations in his pleadings as true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981). Windfield was a production employee of Groen from September, 1985 until his discharge on January 7, 1987. In the interim, the United Steel Workers of America embarked on an organizing campaign to represent Groen's employees. Windfield actively participated in the Union's campaign drive. Pursuant to the Union's request, the NLRB scheduled a representation election for October 10, 1986.

The day before the election, Groen distributed documents to its employees, including Windfield, that stated:

GUARANTEE

This is our PERSONAL
GUARANTEE that
*LeRoy Windfield*

will have a job with our Company even though at one time or another for vari-

---

1. District Judge of the Western District of Louisiana, sitting by designation.

2. The district court's decision rests on *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), which stated a general rule of preemption of state regulation of activities arguably subject to § 7 or § 8 of the National Labor Relation Act. The district court did not rule on Groen's argument that § 9 also supports preemption. We are not persuaded by Groen's position that *Garmon* pre-emption extends *mutatis mutandis* to § 9, which grants the N.L.R.B. the authority to decide questions of representation. 29 U.S.C.A. § 159 (West 1973). In any event, it is unclear to us how § 9 preemption could give Groen any different protection than it has under *Garmon*. Our consideration of the district court's dismissal will focus on the issue briefed by the parties, which is solely whether Windfield's claims are preempted by § 8.

ous reasons you may have signed a union card, as long as you perform your work satisfactorily and we are economically able to operate this business successfully and work is available.

This GUARANTEE is given to you because of the FALSE RUMOR that you will lose your job if the Union loses the election. As you see by this, your own personal GUARANTEE, this is not true and it is an example of other FALSE STORIES AND TACTICS designed to fool and mislead you.

The Union CAN NOT GUARANTEE they will not strike or that they can get you more money. THE UNION CAN NOT GUARANTEE WHAT YOUR COMPANY NOW PROVIDES FOR YOU!

This is our WRITTEN GUARANTEE TO YOU—compare it to the UNION SALES TALK and what the union wants to COLLECT FROM YOU.

Date 10/9/89 By Louise O'Sullivan

GROEN DIV./DOVER CORP.

Groen's President, Louise O'Sullivan, allegedly assured Windfield that the "Guarantee" document was official and that her signature rendered the document enforceable. The employees voted against union representation, thirty-nine to thirty-six. About three months after the election, Groen fired Windfield.

Subsequent to Windfield's termination, the Union staff representative Roy E. Brockman filed unfair labor practice charges against Groen. The Union alleged that the Groen "Guarantee" documents "conveyed a promise of enhanced job secur-

ity designed to frustrate and thwart the union organization effort, in violation of" § 8(a)(1) of the NLRA. Additionally, the Union claimed that Groen had terminated Windfield's employment "because of his membership and activities in behalf of the United Steelworkers of America, a labor organization," in violation of § 8(a)(3). The NLRB refused to issue a complaint on the Union's charges on the ground that "it appears that the evidence is insufficient to warrant further proceedings." The Board's decision was not appealed.

Windfield filed a lawsuit in Mississippi state court on several theories, including breach of express and implied contract, promissory estoppel, and fraud.[3] The question that confronted the district court after removal and us on appeal is whether Windfield's state law claims were preempted by the NLRA.

II.

PREEMPTION

Preemption by federal law is a question of law reviewable de novo. *See Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 565 (9th Cir.1987). Similarly, the district court's conclusion regarding subject matter jurisdiction is reviewed de novo by this court. *Scott v. Machinists Automotive Trades D. Lodge*, 827 F.2d 589, 591 (9th Cir.1987).

The Supreme Court has several times spoken on the issue of preemption of state law claims by the NLRA. While noting some frustration with Congress's utter lack of guidance on this important issue,[4] the Court has struggled to enunciate a govern-

---

**3.** Windfield pursues these legal theories on appeal, but has abandoned two factual bases for contract and promissory estoppel recovery that related to the outcome of the Union election. Appellant's Brief at 8 n. 8. Windfield's express contract claim is that the employment guarantee was supported by the consideration of Windfield's continued employment and that the binding contract was breached. Windfield also maintains that Groen's guarantee coupled with Windfield's continued employment created an implied contract, which was breached. In his promissory estoppel claim, Windfield alleges that he reasonably relied on the guarantee by foregoing a search for a secure job and that

Groen should have reasonably expected such reliance. Windfield alternatively alleges in his fraud claim that Groen intentionally induced Windfield to rely on the guarantee; that Groen knew it was false when made or was reckless as to its truth; and that Windfield reasonably relied on Groen's misrepresentation.

**4.** *See Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 187, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 240–41, 79 S.Ct. 773, 777, 3 L.Ed.2d 775 (1959).

ing theory and to apply it in particular cases. *San Diego Building Trades Council v. Garmon,* 359 U.S. at 244, 79 S.Ct. at 779.[5] *Garmon* recognized that in enacting federal labor legislation through the NLRA, "Congress did not exhaust the full sweep of legislative power...." 359 U.S. at 240, 79 S.Ct. at 777 (quoting *Weber v. Anheuser–Busch, Inc.,* 348 U.S. 468, 480, 75 S.Ct. 480, 488, 99 L.Ed. 546 (1955)). Nevertheless, the NLRA was enacted because "Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules...." *Id.* at 242–43, 79 S.Ct. at 778 (quoting *Garner v. Teamsters,* 346 U.S. 485, 490–91, 74 S.Ct. 161, 166, 98 L.Ed. 228 (1953)). *Garmon* designed a general rule of preemption by stating:

> [w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.

*Id.* at 244, 79 S.Ct. at 779.

The *Garmon* preemption rule covering activities that are arguably protected or prohibited by the NLRA is subject to several significant exceptions. *See Belknap v. Hale,* 463 U.S. 491, 509–10, 103 S.Ct. 3172, 3182–83, 77 L.Ed.2d 798 (1983) (discussing exceptions to *Garmon* ); *see, e.g., Linn v. United Plant Guard Workers,* 383 U.S. 53, 63–64, 86 S.Ct. 657, 663–64, 15 L.Ed.2d 582 (1966) (defamation); *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 197–98, 98 S.Ct. 1745, 1758, 56 L.Ed.2d 209 (1978) (trespass); *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 303–04, 97 S.Ct. 1056, 1065–66, 51 L.Ed.2d 338 (1977) (intentional infliction of emotional distress). The

Court has permitted exceptions to *Garmon* preemption when the state court decides issues that do not threaten significant interference with the NLRB's jurisdiction. *See Sears,* 436 U.S. at 198, 98 S.Ct. at 1758. Moreover, conduct that is a mere "peripheral concern" of federal labor law or that touches "deeply rooted" state interests may be subject to state law although the same activity could arguably be covered by the NLRA. *See Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79. *See also Belknap,* 463 U.S. at 509, 103 S.Ct. at 3182. In such cases, the Court has balanced the state's interest in regulating the conduct against the risk of interference with NLRB enforcement actions, *Local 926, International Union of Operating Engineers AFL–CIO v. Jones,* 460 U.S. 669 at 676, 103 S.Ct. 1453 at 1459, 75 L.Ed.2d 368 (1983), and the risk that the state might punish conduct protected by the NLRA. *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. at 205, 98 S.Ct. at 1761.

Where, as here, the conduct at issue under state law is arguably prohibited by the NLRA, the Court has refined the analytical framework:

> "[t]he critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in *Garner* ) or different from (as in *Farmer* ) that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

*Sears,* 436 U.S. at 197–98, 98 S.Ct. at 1757–58; *see also Belknap,* 463 U.S. at 510–11,

---

5. The Court has articulated two other rules of preemption in labor law matters that are not pertinent here. *See Belknap v. Hale,* 463 U.S. 491, 499, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983) (citing *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976) (*Machinists* preemption "proscribes state regulation and

state-law causes of action concerning conduct that Congress intended to be unregulated....."); *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 1880–81, 100 L.Ed.2d 410 (1988) (preemptive effect of LMRA § 301 over claims that state law should be applied to collective bargaining agreement).

103 S.Ct. at 3183. In weighing the local interest against the risk of interference, *Sears* considered the possible similarity between the "controversies" that would be decided by the NLRB and state tribunals. *See Sears*, 436 U.S. at 196–97, 98 S.Ct. at 1757–58. The determination of potential interference required a more searching comparison than merely the factual bases of each controversy. *Cf. Jones*, 460 U.S. at 689, 103 S.Ct. at 1465 (Rehnquist, J., dissenting) (quoting *Farmer v. Carpenters*, 430 U.S. 290, 304, 97 S.Ct. 1056, 1065, 51 L.Ed.2d 338 (1977)). The broader inquiry into the controversies would involve an examination of the interests protected by and relief requested for each claim. *See Belknap*, 463 U.S. at 510–11, 103 S.Ct. at 3183–84; *Sears*, 436 U.S. at 188–89, 198, 98 S.Ct. at 1753, 1758. Having undertaken the required inquiry, *Sears* concluded that an employer's claim for trespass by union picketers was not preempted by the NLRA.

Had the Supreme Court issued no more opinions on this subject after *Sears*, our task would be well-defined. Alas, the law is not so cooperative: A few years later, the impact of *Sears* was analyzed twice in one Term of Court, with ostensibly differing results. In *Jones*, a supervisor first filed a complaint with the NLRB "alleging that the Union had 'procured' his discharge" and accordingly coerced his employer in "the selection of its ... bargaining representative" in violation of §§ 8(b)(1)(A), (B) of the NLRA. *See id.* at 672–73, 103 S.Ct. at 1456–57. The Board refused to issue a complaint because of insufficient evidence that the Union had caused Jones' discharge. *See id.* Jones did not utilize the administrative appeals process. Instead, he filed a state law action, alleging that the Union had interfered with his employment contract and caused his discharge. *See id.* at 682, 103 S.Ct. at 1462.

The Court determined that the Union's conduct was arguably prohibited by § 8(b)(1)(B) and Jones's claim was preempted by the NLRA. *See id.* Rejecting *Jones*'s argument for the application of state law, the Court observed that the NLRA violation and the state law claim shared a "fundamental" common element: both allegations required a finding that Jones' discharge was "the result of Union influence." *See id.* at 682, 103 S.Ct. at 1462. The Court objected to Jones's attempt to relitigate the question of causation in the state courts and found the risk of state court interference with the Board's jurisdiction "obvious and substantial." *Id.* at 683, 103 S.Ct. at 1462.

Four months later, the Court again applied the *Sears* "identical controversy" standard. The Court held that breach of contract and misrepresentation claims alleged by replacement employees hired during a strike were not preempted despite the fact that the same conduct was arguably prohibited by NLRA §§ 8(a)(1), (3) and (5). *See Belknap*, 463 U.S. at 510–11, 103 S.Ct. at 3183–84. The employer had promised "permanent" employment to the replacement workers if they adhered to company policy. The employer also granted a wage increase during the strike, to which the Union objected and filed an unfair labor practice charge. *See id.* at 495, 103 S.Ct. at 3174–75. Although the Regional Director issued a complaint on the Union's charge, the strike was settled before the Board determined whether the employer committed an unfair labor practice. *See id.* at 496, 103 S.Ct. at 3175–76. When the employer fired the replacement workers, they sued under state law.

Holding that the controversies before the NLRB and state court were not identical, the Court reasoned that the state court could consider the enforceability of the promise under state law without encroaching on the Board's jurisdiction to determine whether the promise constituted an unfair labor practice. *See id.* at 511–12, 103 S.Ct. at 3183–84. The Board's determination of an unfair labor practice would focus on the rights of the strikers while the state court would focus on the replacement workers' rights and the state's interest in preventing misrepresentations and enforcing promises. *Id.* at 510–11, 103 S.Ct. at 3183. Finally, the Court noted that the remedies available to the strikers under the NLRA did not overlap with the remedies sought by the

replacement workers under state law. *See id.*

## III.

### PREEMPTION ANALYSIS APPLIED

 Although preemption issues like this are rarely clear-cut, we are persuaded that Windfield's claims more closely resemble those in *Belknap* than the interference with contract claim held preempted by *Jones.*

The parties agree that Groen's "personal guarantee" of employment and an anti-union discharge are arguably prohibited by §§ 8(a)(1) and 8(a)(3) of the NLRA, rendering Windfield's cause of action preempted unless it falls within an exception to *Garmon.* *See Belknap*, 463 U.S. at 509, 103 S.Ct. at 3182. On one level, *Belknap* clearly supports Windfield's contention that his claims for breach of employment contract, promissory estoppel and fraud touch a deeply rooted state interest, for *Belknap* dealt with nearly identical causes of action. *Belknap* also concluded that the state's interest in enforcing such claims was of peripheral concern to the NLRB and did not involve an "identical cause of action" pursuant to *Sears.*

*Belknap* is not fully analogous to this case, however, because the plaintiffs there were non-union replacement workers whose treatment by Belknap could not be the focus of an NLRB proceeding. The Board would adjudicate only whether the offer of employment to replacement workers infringed the rights of strikers. Groen argues that Windfield, as a pro-union activist and member of the potential bargaining unit, would have been a direct beneficiary of an NLRB adjudicative proceeding to determine whether its personal guarantee or his firing was an unfair labor practice. As such, Windfield is allegedly just a forum-shopper who, once the union failed to convince the general counsel of the NLRB to file a complaint in its behalf, simply carried his dissatisfaction into state court. Moreover, Groen argues, the NLRB has much more than a peripheral interest in assuring that the personal guarantee did not interfere with the workers' free choice during the representation election.

We do not consider these points critical, based on examination of the issues and interests to be reckoned under the NLRA and the state law.

In its unfair labor practice charges, the Union alleged that Groen "implemented unilateral changes bestowing benefits" upon employees and terminated Windfield because of his participation in Union activities. The Board had jurisdiction to decide whether Groen's "personal guarantee" constituted a promise of an employment benefit that violated § 8(a)(1) by interfering with or restraining or coercing "employees in the exercise of the rights guaranteed in section 7". 29 U.S.C.A. § 158(a)(1); *see N.L.R.B. v. Exchange Parts Co.*, 375 U.S. 405, 408–09, 84 S.Ct. 457, 459–60, 11 L.Ed.2d 435 (1964). A preferred remedy, if the employment "guarantee" were held to be an unfair labor practice, would be a new, untainted representation election. *N.L.R.B. v. Chester Valley, Inc.*, 652 F.2d 263, 272 (2d Cir.1981).

The Union's § 8(a)(3) charge required the Board to consider whether Groen terminated Windfield for his Union activities in order to "encourage or discourage membership in any labor organization...." 29 U.S.C.A. § 158(a)(3). The Board's inquiry would include the impact, if any, of Windfield's termination upon other Groen employees and its possible tendency to discourage union membership. The only motive for Windfield's discharge with which the Board would be concerned would be anti-Union animus.[6] The Board could order Windfield's reinstatement and back pay if it upheld this unfair labor practice charge.

While the NLRB examines these unfair labor practice charges for their effect upon the Groen employees' free choice in the

---

6. *See N.L.R.B. v. Computed Time Corp.*, 587 F.2d 790, 795 (5th Cir.1979). The narrow scope of Board review was noted by this court in *Computed* where we stated: "[i]t is not the function of either the Court or the Board to second guess management decisions. Management is free to discharge employees for good cause, bad cause, or no cause at all." *Id.* at 795 (citation omitted).

representation election, Windfield's state law contract, promissory estoppel and fraud claims arising from the "personal guarantee" contemplate a discrete, narrow inquiry into the relationship between him and his former employer. Conversely, the NLRB would not necessarily determine whether the "personal guarantee" created a contract or quasi-contract or perpetrated a fraud under Mississippi law in order to rule on the unfair labor practice charges.[7] Thus, as the Court held in *Sears* and *Farmer,* some common facts may be relevant to both NLRB and state court proceedings, but the two trial tribunals will not perform an "identical inquiry".

*Belknap* provides further support for our conclusion in its observation of incredulity that federal labor law might be held to create an exemption from state law liability for misrepresentations or promises that are not specifically privileged as a matter of federal policy. *See Belknap,* 463 U.S. at 500, 512, 103 S.Ct. at 3177, 3184. This concern is equally applicable whether the victim of the breach of contract or fraud is, like Windfield, a union organizer, or a replacement worker like the plaintiffs in *Belknap.*

Our recitation of the distinctions between the NLRB and state interests and claims here also suffices to distinguish *Jones.* On the facts of that case, the Supreme Court appears to have concluded that the proof required for a state law claim for interference with contract overlapped too much with that for an unfair labor practice charge to alleviate a risk of inconsistent results between the state court and NLRB. The NLRB had already found insufficient evidence that the Union caused Jones's discharge. Here, as we have found, the overlap will be tangential to the legal issues within the purview of the NLRB and state law.

We conclude that Windfield's state law claims are not preempted by the NLRA.

Although they relate to conduct that might be arguably prohibited by the NLRA, they do not present an "identical controversy" to that within the Board's jurisdiction, and they involve matters that the state has a strong interest in regulating. Finally, the risk of inconsistent adjudication between the NLRB and state law is small.

The judgment of the trial court is accordingly REVERSED, and the case is REMANDED for further proceedings.

---

7. The district court incorrectly construed Windfield's allegations by stating: "[t]hus, by ruling out all other possible motives for his discharge, Windfield's claim is essentially that Groen terminated his employment because of his Union activities, ..." Rather, Windfield simply alleges that he was terminated in breach of the contract. Windfield should be permitted to prove he was discharged for reasons other than those allowed by the guarantee or prohibited by § 8(a)(3).