Anthony **VOLENTINE, et al., Plaintiffs,**

v.

**BECHTEL, INC. and Mobil Chemical Company, Inc., Defendants.**

No. 1:98CV1609(TH).

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 19, 1998.

David Arthur Brandom, Jane Swearingen Brown, Tom Swearingen, Provost & Umphrey, Beaumont, TX, for Plaintiffs.

Elizabeth A. Hall, Victor Scott Kneese, Bracewell & Patterson, Houston, TX, for Defendant Bechtel, Inc.

Robert J. Hambright and Gilbert ("Buddy") Irvine Low, Orgain, Bell & Tucker, Beaumont, TX, for Defendant Mobil Chemical Co.

## MEMORANDUM AND OPINION ORDER

HEARTFIELD, District Judge.

Before this Court is *Bechtel, Inc.'s and Mobil Chemical Company's Motion for Summary Judgment* [14]. Having considered the motion, the response, and the reply to the response, this Court hereby GRANTS *Bechtel, Inc.'s and Mobil Chemical Company's Motion for Summary Judgment* [14].

### 1. Facts

The autumn of 1996 brought together Bechtel, Inc. ("Bechtel"), Mobil Chemical Company—a division of Mobil Oil Corporation ("Mobil"), and some three hundred and eight (308) individual plaintiffs who bring this lawsuit. In August 1996, Mobil began work on its Olefins Expansion Project (the "Expansion Project") in Beaumont, Texas. In order to complete the Expansion Project, Mobil hired Bechtel as the general contractor; and C.A. Turner Contractors ("C.A.Turner") came on board as a subcontractor. All three hundred and eight (308) plaintiffs in this lawsuit worked for subcontractor C.A. Turner at Mobil's Expansion Project.

April 13, 1998 was just like any other spring day in Beaumont, Texas. However, that fair, 60–degree day was anything but normal for the employees at Mobil's Expansion Project. In fact, when the day was said and done and the red-orange sun had vanished beneath the clouded horizon, some three hundred and eight (308) of C.A. Turner's employees were fired from Mobil's Expansion Project.

Fired for what? In fact, our story begins April 9, 1998, just a few days before the firing of the three hundred and eight (308) Plaintiffs. On April 9, 1998, Bechtel's construction site manager for the Expansion Project, Sam Stoddard, sent a letter to all Bechtel subcontractors—including C.A. Turner—informing them that there would no longer be organized breaks or organized break areas because of the alleged abuse of breaks. Apparently, Bechtel determined that en masse breaks were, quite logically, creating productivity problems. As a result, Bechtel decided to eliminate en masse breaks. However, Bechtel advised C.A. Turner that its employees could take breaks as needed, but C.A. Turner would have to pay for them.[1] C.A. Turner declined to pay for the breaks. When the employees took en masse breaks in contravention of Bechtel's directive, Bechtel terminated its contract with C.A. Turner which had the practical effect of firing C.A. Turner's employees from Mobil's Expansion Project. This lawsuit resulted.

### 2. Summary Judgment Standard

Rule 56(b) of the Federal Rules of Civil Procedure states: "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Furthermore, Rule 56(c) states, in part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, summary judgment is proper when, after a reasonable period for discovery, one party is unable to show a genuine issue as to a material fact on which he will bear the burden of proof at trial, provided that judgment against him is appropriate as a matter of law. *Nebraska v. Wyoming*, 507 U.S. 584, 589, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); *Celotex* 477 U.S. at 322, 106 S.Ct. 2548. The moving party need not negate the elements of the non-moving party's case. *Id.*

---

1. Regardless, Bechtel encourages employees at Mobil's Expansion Project to take breaks as needed for safety reasons—just not all at the same time.

at 323, 106 S.Ct. 2548; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, and *Lujan v. National Wildlife Fed'n.*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990)). Rather, the moving party need only "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

The non-moving party does not overcome the absence of a genuine issue of material fact by simply "creating some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), by making "conclusory allegations," *Lujan*, 497 U.S. at 871–73, 110 S.Ct. 3177, by presenting "unsubstantiated assertions," *Little*, 37 F.3d at 1075, or by proffering only a "scintilla" of evidence. *Id.* When the non-moving party fails to make a sufficient showing on an essential element of his case, the moving party is entitled to a judgment as a matter of law. *Id.* Nonethe-

less, when considering a motion for summary judgment, the trial court must construe all evidence in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992). With this standard in mind, this Court now turns to the particular question before it—namely, whether *Garmon* and its progeny preempts this lawsuit.

**3. Please, Don't Squeeze the Garmon**

Defendants argue that *Garmon* and its progeny preempt all of Plaintiffs' claims because they lie within the exclusive jurisdiction of the National Labor Relations Board established by the National Labor Relations Act.[2] Specifically, Defendants claim that this entire lawsuit is preempted by Sections 7 and 8 of the National Labor Relations Act ("NLRA").[3] 61 Stat. 140, 29 U.S.C. §§ 157, 158. With the creation of the NLRA, Congress established a "comprehensive amalgam

**2.** In 1935 Congress enacted the National Labor Relations Act, commonly referred to as the "Wagner Act." In 1947, Congress amended this act by the National Labor Management Relations Act, commonly referred to as the "Taft–Hartley Act." This Court will use "NLRA" to refer to the National Labor Relations Act as amended by the National Labor Management Relations Act.

**3.** Section 157 of the National Labor Relations Act reads, in its entirety:
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title. 29 U.S.C. § 157 (1998).
Section 158 of the National Labor Relations Act reads, in part:
It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it ...
(3) by discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage mem-

bership in any labor organization ... 29 U.S.C. § 158 (1998).
There is yet a different type of preemption other than *Garmon* preemption—specifically, preemption under § 301 of the Labor Management Relations Act as described by *Lingle v. Norge Div. of Magic Chef* for matters touching upon the interpretation of a collective bargaining agreement. 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In that case, the Supreme Court held "that an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." *Lingle*, 486 U.S. at 413, 108 S.Ct. at 1885, 100 L.Ed.2d 410; *see Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994) ("Preemption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement"); *Barrow v. New Orleans Steamship Assoc.*, 10 F.3d 292, 300 (5th Cir.1994) ("The LMRA preempts state-law emotional distress claims if those claims are related to employment discrimination"). Since the present case does not call upon the interpretation of a collective-bargaining agreement, this *Lingle*-type preemption is not relevant to current discussion. For a recent case discussing the two different types of preemption—*Garmon* and *Lingle*— see *Banfield v. Laidlaw Waste Sys.* No. 05–96–01425–CV, 977 S.W.2d 434, 1998 WL 519485 (Tex.App.—Dallas, Aug.24, 1998).

of substantive law and regulatory arrangements ... to govern labor-management relations affecting interstate commerce." *Local 926, Int'l. Union of Operating Engineers v. Jones,* 460 U.S. 669, 675–76, 103 S.Ct. 1453, 1458, 75 L.Ed.2d 368 (1983). In *San Diego Building Trades Council, Local 2020 v. Garmon* the Supreme Court noted the considerable deference afforded the NLRA by the courts: "[T]he unifying consideration of our decisions has been regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." 359 U.S. 236, 242, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). Thus, key to the NLRA—this "centralized administrative agency"—is its freedom from fragmentation by state-law causes of action intruding upon its broad jurisdiction. Realizing the need to protect this jurisdiction from such fragmentation, the Supreme Court in *Garmon* held:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law ... *When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.*

359 U.S. at 245, 79 S.Ct. at 780, 3 L.Ed.2d 775 (emphasis added). The Supreme Court established this rule to prevent state-law distortion of well-developed, federal labor law. There is, as always, a loophole to this rule. "Under Garmon, a state may regulate conduct that is of only peripheral concern to the Act or which is so deeply rooted in local law that the courts should not assume that Congress intended to preempt the application of

state law." *Belknap v. Hale,* 463 U.S. 491, 509, 103 S.Ct. 3172, 3182, 77 L.Ed.2d 798. That is, the "Court has permitted exceptions to Garmon preemption when the state or federal court will decide issues 'that do not threaten significant interference with the NLRB's jurisdiction.'" *Hobbs v. Hawkins,* 968 F.2d 471, 476 (5th Cir.1992) (citing *Windfield v. Groen Div., Dover Corp.,* 890 F.2d 764, 767 (5th Cir.1989)).

 *Garmon* and its progeny are anything but black-letter law. Faced with "Congress' utter lack of guidance on this important issue [preemption by the NLRA]," the Supreme Court "has struggled to enunciate a governing theory and apply it in particular cases." *Windfield* 890 F.2d at 766–67. Thus, the courts, under the guidance of the Supreme Court and *Garmon,* have struggled to define the otherwise blurry boundary between broad NLRA preemption and permissible state causes of action. Spear-heading this struggle, the Court has since refined the analytical framework established under *Garmon:*

> The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in Garner) or different from (as in Farmer) that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to avoid.

*Sears, Roebuck, & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 197–98, 98 S.Ct. 1745, 1757–58, 56 L.Ed.2d 209 (1978); *see also Belknap* 463 U.S. at 510–11, 103 S.Ct. 3172. "In weighing the local interest against the risk of interference, Sears considered the possible similarity between the 'controversies' that would be decided by the NLRB and state tribunals. The determination of potential interference required a more searching comparison than merely the factual bases of each controversy.

The broader inquiry into the controversies would involve an examination of the interests protected by and relief requested for each claim." *Windfield,* 890 F.2d at 768 (citations omitted). This freshly refined application of *Garmon* has been coined the "identical controversy" standard. *Id.* That is, if a plaintiff calls upon a state or federal court to perform an "identical inquiry" into a controversy previously placed before the National Labor Relations Board, then the claim is preempted by the NLRA pursuant to *Garmon* and its progeny so long as it significantly interferes with the function of the National Labor Relations Board and does not involve a matter deeply rooted in local concerns. *Id.* at 770. However, claims that involve conduct arguably prohibited by the NLRA may nonetheless proceed if "they do not present an 'identical controversy' to that within the Board's jurisdiction, and they involve matters that the state has a strong interest in regulating."[4] *Id.* With these standards in mind, this Court now briefly considers automatic preemption by the NLRB and subsequently turns to each cause of action currently before it.

### 4. Automatic Preemption by Prior Filing With the NLRB

■ Before delving into *Garmon* analysis of the present causes of action, this Court would first note that unions representing Plaintiffs filed three unfair labor practice charges with the NLRB claiming violations of Section 8 that address the same conduct involved in Plaintiffs' state-law claims currently before this Court. On April 14, 1998, Pipe Fitters Local Union No. 195 ("Local 195") filed an unfair labor practice charge against Bechtel alleging violations of Sections 8(a)(1), (3), and (5) of the NLRA by unilaterally eliminating established, organized work breaks and discriminatorily terminating em-

ployees because of their membership in or activities on behalf of their collective bargaining representative. *Charge 16–CA–19270–1.* On April 20, 1998, the International Union of Operating Engineers, Local 450 ("Local 450") and the Texas Laborers' District Council and Laborers' 80 ("Texas Laborers") each filed similar charges against Bechtel. *See Charges 16–CA–19270–2 and 16–CA–19270–3.* On June 2, 1998, Charges 16–CA–19270–1 and 16–CA–19270–2 were amended to assert identical allegations against Mobil. The National Labor Relations Board investigated these allegations and, on July 31, 1998, refused to issue a complaint in the matter.[5] Interestingly, Plaintiffs' attorneys are the same attorneys who filed the unfair labor practice charges dismissed by the National Labor Relations Board.

Defendants argue, and this Court concedes, that "the Supreme Court strongly suggested that the union's filing of an unfair labor practice charge may be sufficient, in and of itself, to trigger preemption." *Bechtel and Mobil's Motion for Summary Judgment* 1; *see Sears, Roebuck, & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 201, 98 S.Ct. 1745, 1759, 56 L.Ed.2d 209 (1978). Other circuits have read *Sears* with the same eye toward "automatic preemption." *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1517 (11th Cir.1988) (stating that "[b]y initially pursuing relief with the NLRB the employees have implicitly recognized the Board's jurisdiction over their claims"); *Davis Supermarkets, Inc. v. N.L.R.B.,* 2 F.3d 1162, 1178–79 (D.C.Cir.1993) (acknowledging that *Sears* "strongly suggested that the union's filing of an unfair labor practice charge is sufficient in and of itself to trigger preemption"). Although this Court respects the analysis of its sister circuits, it will not throw out a case on a mere "suggestion" of law—particularly when its own circuit has been

---

**4.** In deciding whether to permit state law claims to go forward, a court must avoid "the risk of inconsistent adjudication between the NLRB and state law." *Windfield,* 890 F.2d at 770.

**5.** All of this information is, of course, artfully omitted in Plaintiff's Third Original Amended Petition and, as such, is found as exhibits to Bechtel and Mobil's Motion for Summary Judgment. Plaintiffs' attorneys were privy to this

information because they themselves filed the related unfair labor practice charges with the National Labor Relations Board. Other courts have taken such behavior as an implicit acknowledgment of the NLRB's exclusive jurisdiction over the controversy. *Parker,* 855 F.2d at 1517 ("By initially pursuing relief with the NLRB the employees have implicitly recognized the Board's jurisdiction over their claims").

silent on this possible "suggestion." Besides, *Garmon* analysis so clearly preempts Plaintiffs' causes of action that this Court need not rely on a tenuous suggestion of law upon which to base its decision.

### 5. Tortious Interference and Conspiracy to Tortiously Interfere With a Contract

■ In counts one and two of their Complaint, Plaintiffs present claims for tortious interference with a contract and conspiracy to tortiously interfere with a contract.[6] *Plaintiffs' Third Original Amended Petition* 9–12. These claims for tortious interference with a contract and conspiracy to tortiously interfere with a contract are arguably protected or prohibited by the NLRA and, consequently, preempted pursuant to the *Garmon* doctrine as refined by *Sears*.

In *Local 926, Intl. Union of Operating Engineers v. Jones* the Supreme Court held that state-law actions for tortious interference with a contract and conspiracy to tortiously interfere with a contract involve conduct arguably protected or prohibited by the NLRA. 460 U.S. 669, 678, 103 S.Ct. 1453, 1460, 75 L.Ed.2d 368 (1983). There, a supervisory employee sued his union for tortious interference with a contract and conspiracy with the employer to interfere with his contract. *Id.* at 672, 103 S.Ct. 1453. Specifically, Jones alleged that his past non-union activity generated hostility at his union and, acting upon that hostility, his union's business agent retaliated against him by coercing his employer to breach its employment contract with him. *Id.* at 674, 103 S.Ct. 1453. The Supreme Court held that, if proven, such conduct would violate the NLRA's § 8(b)(1)(A) language "which forbids a union to coerce an employer in the choice of his bargaining representative," which, consequently, would restrain employees' exercise of their Section 7 rights. *Id.* at 679, 103 S.Ct. 1453. Since such conduct was arguably subject to Sections 7 and 8 of the National Labor Relations Act, the state-law causes of

action grounded upon that conduct—tortious interference with contract and conspiracy to tortiously interfere with a contract—were preempted pursuant to the *Garmon* doctrine as refined by *Sears*. *See also Iron Workers v. Perko,* 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963) (claim of tortious interference with a contract preempted by *Garmon* ); *Ehredt Underground, Inc. v. Commonwealth Edison, Co.,* 90 F.3d 238, 241 (7th Cir.1996) (same).

Plaintiffs, along with Local 195, refused to accept the elimination of established, organized work breaks. Plaintiffs—indeed with representation by the very law firm before this Court—alleged in their charges to the NLRB that Bechtel and Mobil interfered with Plaintiffs' employment contracts because of their membership in or activities on behalf of their union in violation of Sections 8(a)(1) and (3) of the NLRA. Although Plaintiffs' prior filing of an unfair labor practice charge with the NLRB does not (necessarily) automatically preempt their state-law claims, it does indeed provide some evidence that the Plaintiffs themselves believed Bechtel's and Mobil's allegedly unlawful conduct is arguably subject to (and thus preempted by) the NLRA pursuant to the *Garmon* doctrine as refined by *Sears. Parker,* 855 F.2d at 1517. If Bechtel or Mobil interfered with Plaintiffs' employment contracts because of their membership in or activities on behalf of their union, as Plaintiffs themselves alleged in their charges to the NLRB, then such conduct would arguably violate Sections 8(a)(1) and (3) of the NLRA.

Pursuant to the *Garmon* doctrine as refined by *Sears,* such conduct presents an identical controversy to that previously presented to—and dismissed by—the NLRB. In dismissing the complaint, the NLRB stated "[t]he evidence shows, therefore, that the employees were engaged in unprotected activity for which they could be legitimately

---

**6.** Under Texas law "[t]o establish a claim for tortious interference, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) wilful and intentional interference with that contract; (3) the intentional interference was a proximate cause of plaintiff's damage; and

(4) actual damage or loss occurred." *Wardlaw v. Inland Container Corp.,* 76 F.3d 1372, 1375 (5th Cir.1996); *Massey v. Houston Baptist University,* 902 S.W.2d 81, 85 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

discharged."[7] *July 31, 1998 NLRB Letter Attachment "A"* 3. These state-law claims are not merely "peripheral" to the NLRA. Quite the contrary, Plaintiffs' state-law claims for tortious interference with contract and conspiracy to interfere with contract fall deep within the roots of federal labor law under the particular facts of this case. Plaintiffs at Mobil's Expansion Project were told by C.A. Turner (at the behest of Bechtel) that they could no longer take en masse breaks. Plaintiffs continued to take en masse breaks in violation of that warning and thus were terminated from Mobil's Expansion Project by Bechtel's cancellation of its contract with C.A. Turner—a contractor now unable to staff the job with employees willing to forego en masse breaks. Plaintiffs brought unfair labor charges against Bechtel and Mobil that were thrown out by the NLRB since "the employees were engaged in unprotected activity for which they could be legitimately discharged." *July 31, 1998 NLRB Letter Attachment "A"* 3. Now, Plaintiffs seek a second bite at the same, tired apple. Well, no deal. Plaintiffs are trying to recast their prior claim dismissed by the NLRB as something other than identical to the controversy currently before this Court. It is not.[8]

In support of their contention of non-preemption, Plaintiffs argue that "[t]he NLRB has unequivocally stated that the conduct which the defendant would now claim is arguably protected or prohibited by the Act is not ... Therefore, since the NLRB has determined that the conduct made the basis of the union's charges is not protected or prohibited by the Act, this Court cannot now rule that the conduct is arguably protected or prohibited by the Act." *Plaintiffs' Response* 5. For this reason, Plaintiffs contend preemption should not occur. Plaintiffs cite this Court to a page of the *Garmon* decision wherein the Supreme Court noted that "the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States." *Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775. Seizing upon this language, the Plaintiffs advance their notion of non-preemption. This is not a novel argument. In the 1949 "Briggs–Stratton case," the Supreme Court did indeed accept this argument and permit state-law causes of action to proceed since the conduct was neither protected by § 7 nor prohibited by § 8 of the NLRA. *Automobile Workers v. Wisconsin Emp. Rel. Board*, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1949). However, in 1976 the Supreme Court explored "the question of the continuing vitality of Briggs–Stratton." *Lodge 76, Intl. Assoc. of Machinists and Aerospace Workers, AFL—CIO v. Wisconsin Employment Relations Comm'n.*, 427 U.S. 132, 151, 96 S.Ct. 2548, 2558, 49 L.Ed.2d 396 (1976). After exploring the question of Briggs–Stratton's vitality, the Supreme Court announced its death: "We hold today that the ruling of Briggs–Stratton, permitting state regulation of partial strike activities such as are involved in this case is likewise 'no longer of general application.'" *Id.* In addition to overruling Briggs–Stratton, the Supreme Court further held that:

> a particular activity might be "protected" by federal law not only when it fell within § 7, but also when it was an activity that

---

7. The NLRB further found that "[t]here is no evidence of union animus on the part of Bechtel or Mobil. Additionally, there is no evidence that Mobil played a role in the decision to eliminate breaks or to terminate Turner's employees." *July 31, 1998 NLRB Letter Attachment "A"* 2. Although this Court holds that *Garmon* as refined by *Sears* preempts Plaintiffs' state-law claims, it nonetheless remains interested in the preclusive effects of a National Labor Relations Board dismissal of complaint upon parties seeking state-law relief in a federal court—specifically, whether statements by the federally empowered NLRB in dismissing the complaint provide a preclusive defense against federal-court Plaintiffs who must overcome the state-law affirmative defense of

legal justification. Put down those pens because those briefs, thankfully, are for another day.

8. In their brief Plaintiffs argue "[t]his is not a labor law case." *Plaintiffs' Response to Defendants' Bechtel, Inc. and Mobil Chemical Company, Inc., [sic] Motion for Summary Judgment ("Plaintiffs' Response")* 1. No, it's not. It's a labor law case *that the plaintiffs lost* in front of the NLRB. Now, it's a transmogrified labor-law case masquerading as several state-law causes of action. *Richardson v. Kruchko & Fries*, 966 F.2d 153, 158 (4th Cir.1992). This Court's task (nay, its very duty pursuant to *Garmon*) is to detransmogrify the state-law causes of action to reveal the underlying labor law case.

Congress intended to be "unrestricted by Any governmental power to regulate" because it was among the permissible "economic weapons in reserve ... actual exercise (of which) on occasion by the parties, is part and parcel of the system that the Wagner and Taft–Hartley Acts have recognized." ... "[T]he legislative purpose may ... dictate that certain activity 'neither protected nor prohibited' be deemed privileged against state regulation."

Lodge 76, 427 U.S. at 141, 96 S.Ct. at 2554, 49 L.Ed.2d 396 (emphasis added) (quoting NLRB v. Insurance Agents', 361 U.S. at 488–89, 80 S.Ct. at 426–27, 4 L.Ed.2d 454 (1960); and quoting Hanna Mining Co. v. Marine Engineers, 382 U.S. 181, 187, 86 S.Ct. 327, 331, 15 L.Ed.2d 254 (1965)).[9] In the case currently before this Court, the NLRB found "that the employees were engaged in unprotected activity for which they could legitimately be discharged." July 31, 1998 NLRB Letter Attachment "A" 3. While this NLRB letter may "unequivocally" (to borrow the Plaintiffs' term) state the conduct is neither protected nor prohibited by the NLRA, it does not state that the conduct is neither arguably protected nor arguably prohibited by the NLRA.[10]

For this Court to permit Plaintiffs' state-law claims for tortious interference with contract and conspiracy to tortiously interfere with contract to proceed would violate the very core of Garmon —namely, to permit discordant state-law claims to disrupt the uniform application of federal labor law across the nation. This cuts against the very essence of Garmon and its progeny; and this Court will not launch such a piecemeal intrusion upon the National Labor Relations Act. The Fifth Circuit's reading of the previously discussed Jones case provides further guidance: "On the facts of that case, the Supreme Court appears to have concluded that the proof required for a state law claim for interference with contract overlapped too much with that for an unfair labor practice charge to alleviate a risk of inconsistent results between the state court and NLRB. The NLRB had already found insufficient evidence that the Union caused Jones's discharge." Windfield, 890 F.2d at 770 (5th Cir.1989). Similarly, the NLRB has already found that Plaintiffs were engaged in unprotected activity for which they could legitimately be discharged. For this Court to permit Plaintiffs to recover under state-law claims for conduct inextricably intertwined with federal labor law runs the risk of interference sought to be avoided by the Garmon doctrine. Plaintiffs' state-law claims for tortious interference with contract and conspiracy to tortiously interfere with contract are preempted by Garmon as refined by Sears. Accordingly, this Court hereby GRANTS Defendants' motion for summary judgment as to Plaintiffs' claims for tortious interference with contract and conspiracy to tortiously interfere with contract.

9. The Supreme Court further held: "Briggs–Stratton is today overruled, and ... we hold further that the Union's refusal to work overtime is peaceful conduct constituting activity which must be free of regulation by the States if the congressional intent in enacting the comprehensive federal law of labor relations is not to be frustrated ..." Lodge 76, 427 U.S. at 155, 96 S.Ct. at 2560, 49 L.Ed.2d 396. Thus, even though the peaceful conduct was neither protected nor prohibited by the NLRA, the Supreme Court found that the conduct was nonetheless preempted. Similarly, even though the NLRB found the conduct made the basis of this current action is neither protected nor prohibited by the NLRA, this Court similarly finds the conduct is nonetheless preempted.

10. Indeed, Plaintiffs' lawyers themselves filed unfair labor practice charges with the NLRB on behalf of the Plaintiffs' unions for the conduct made the basis of this present action. When they filed their charges with the NLRB, they obviously thought the conduct was arguably protected or prohibited by the NLRA. (For why else would they file complaints there?) Plaintiffs' lawyers come to this Court alleging that the same conduct is now not arguably protected or prohibited by the NLRA. Well, which is it? Obviously, the difficulty lies with the malleable nature of the word arguably injected into Garmon analysis. While Plaintiffs tend to read the arguably portion of Garmon analysis quite narrowly, Defendants read arguably quite broadly. This Court, along with a plethora of other courts, agrees with the Defendants' broad interpretation of Garmon preemption. If the Supreme Court had wanted to create only narrow NLRA preemption, then it would not have injected such an over-reaching term into NLRA preemption analysis. Moreover, it would not have stood by such broad interpretation for the past forty years.

### 6. Intentional Infliction of Emotional Distress

Plaintiffs' also bring a state-law claim for intentional infliction of emotional distress against Defendants Bechtel and Mobil.[11] In *Farmer v. United Brotherhood of Carpenters*, the Supreme Court permitted a state-law claim for intentional infliction of emotional distress to proceed despite the wide berth generally given to NLRA preemption pursuant to the *Garmon* doctrine as refined by *Sears*. 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). There, Richard T. Hill, a carpenter and member of Local 25 of the United Brotherhood of Carpenters and Joiners of America, alleged that union officials began discriminating against him in referrals to employers after a disagreement over internal union policies.[12] *Id.* at 292, 97 S.Ct. 1056. In holding the state-law intentional infliction of emotional distress claim survived the rigorous application of *Garmon* preemption, the Supreme Court reasoned:

> If the charges in Hill's complaint were filed with the Board, the focus of any unfair labor practice proceeding would be on whether the statements or conduct on the part of Union officials discriminated or threatened discrimination against him in employment referrals for reasons other than failure to pay Union dues. Whether the statements or conduct of the respondents also caused Hill severe emotional distress and physical injury would play no role in the Board's disposition of the case, and the Board could not award Hill damages for pain, suffering, or medical expenses. Conversely, the state-court tort action can be adjudicated without resolution of the "merits" of the underlying labor dispute ... The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee in terms of employment opportunities.

*Farmer*, 430 U.S. at 304, 97 S.Ct. 1056 (citation omitted). Upon this hook many *plaintiffs* attempt to hang their intentional infliction of emotional distress claims.

At the outset, this Court notes that the Fifth Circuit has read the *Farmer* exception to *Garmon* preemption quite narrowly.[13] In *Brown v. Southwestern Bell Telephone, Co.* the Fifth Circuit faced a "panoply of tort and contract claims, all arising from the denial of Brown's disability benefits and from his subsequent discharge."[14] 901 F.2d 1250 (5th Cir.1990). Faced with a plaintiff waving the *Farmer* exception and claiming no preemption of his state tort claim of intentional infliction of emotional distress, the Fifth Circuit refused to allow the intentional infliction of emotional distress claim to proceed any further:

> *Farmer* does not hold that claims for intentional infliction of emotional distress are never preempted by the federal labor laws, but rather that such claims may escape preemption when they relate only peripherally to federal concerns ... [T]he Court reasoned that abusive conduct unrelated to labor practices is wholly outside the scope of federal preemption. The Court cautioned, however, that allegedly improper labor practices cannot themselves constitute the "outrageous conduct" necessary to establish the tort of intentional infliction of emotional distress ...

11. "Under Texas law, intentional infliction of emotional distress has four elements: 1) the defendant acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) the defendant's actions caused the plaintiff emotional distress; and 4) the emotional distress suffered by the plaintiff was severe." *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir.1998); *Hart v. O'Brien*, 127 F.3d 424, 452 (5th Cir.1997); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993) (citing Restatement (Second) of Torts § 46 (1965)).

12. Unfortunately, Mr. Hill died after the Supreme Court granted his writ of certiorari. The Supreme Court substituted Joy A. Farmer, special administrator of Mr. Hill's estate, in Mr. Hill's place. *Id.* at 292, fn. 1.

13. Or, stated another way, the Fifth Circuit has read *Garmon* preemption quite broadly. Half empty, half full.

14. Incidentally, Random House Dictionary defines "panoply" as "1) a wide-ranging and impressive array or display; [or] 2) a complete suit of armor." *Random House Unabridged Dictionary*, 2d ed. (1993). This Court assumes the first definition applies in this instance.

*Id.* at 1256. The Fifth Circuit has since continued its narrow interpretation of the *Farmer* exception. "Although Farmer noted the existence of section 301 preemption, it did not address that preemption in the context of the facts before it. We [the Fifth Circuit] have interpreted Farmer's stance on preemption of emotional distress claims narrowly." *Baker v. Farmers Electric Cooperative, Inc.,* 34 F.3d 274, 278, fn. 4 (5th Cir. 1994) (citations omitted). Indeed, the Fifth Circuit has continued to respect *Garmon* preemption of state tort claims despite the existence of the *Farmer* exception. *Smith v. Houston Oilers,* 87 F.3d 717, 721 (5th Cir. 1996).

In fact, realizing the potential breadth of its exception carved out in *Farmer,* the Supreme Court itself warned:

At the same time, we reiterate that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme. Union discrimination in employment opportunities cannot itself form the underlying "outrageous" conduct on which the state-court tort action is based; to hold otherwise would undermine the preemption principle ... *Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.*

*Id.* at 305, 97 S.Ct. 1056 (emphasis added). Upon this hook many *defendants* attempt to hang their preemption defense despite the *Farmer* exception.

Therefore, in order for the Plaintiffs to proceed with their state-tort claim for intentional infliction of emotional distress under *Farmer* (and, in particular, in line with the language emphasized above), this Court must find that the claim is either 1) unrelated to employment discrimination, or 2) a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself. Obviously, the Plaintiffs cannot succeed under the first prong since their state tort of intentional infliction of emotional distress is related—if not forever married to—employment discrimination. Plaintiffs, employed by subcontractor C.A. Turner at Mobil's Expansion Project, took en masse breaks in violation of a directive issued by Bechtel. Faced with a subcontractor whose employees refused to follow its directive to forego en masse breaks, Bechtel terminated its contract with C.A. Turner which effectively fired Plaintiffs from Mobil's Expansion Project. Plaintiffs then filed unfair labor charges against Bechtel and Mobil alleging violations of Sections 8(a)(1) and (3) of the NLRA. Specifically, the barrage of claims are as follows: On April 14, 1998, Local 195 filed an unfair labor practice charge against Bechtel alleging violations of Sections 8(a)(1), (3), and (5) of the NLRA by unilaterally eliminating established, organized work breaks and discriminatorily terminating employees because of their membership in or activities on behalf of their collective bargaining representative. *Charge 16–CA–19270–1.* On April 20, 1998, Local 450 and the Texas Laborers each filed similar charges against Bechtel. *See Charges 16–CA–19270–2 and 16–CA–19270–3.* On June 2, 1998, Charges 16–CA–19270–1 and 16–CA–19270–2 were amended to assert identical allegations against Mobil. The National Labor Relations Board investigated these allegations and, on July 31, 1998, refused to issue a complaint in the matter. By initially pursuing relief from the National Labor Relations Board, Plaintiffs themselves acknowledged that their claim is related to employment discrimination. Therefore, Plaintiffs fail to escape preemption under the first prong since their claim is related to employment discrimination.

The second prong directs this Court to determine whether the state tort is a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself. Once again, the Plaintiffs cannot succeed under the second prong since their claim for intentional infliction of emotional distress is not a function of the particularly abusive manner in which the discrimination is accomplished but, rather, a function of the alleged actual or threatened discrimination itself. Plaintiffs'

Complaint offers no allegation of "particularly abusive" conduct on the part of Bechtel and Mobil. Rather, Plaintiffs simply allege: "The Defendants ... wilfully and intentionally set about to cause or force C.A. Turner Construction Company to terminate its contracts of employment with Plaintiffs. Moreover, the Defendants set about to accomplish their objective by making false and misleading accusations against the Plaintiffs and disparaging the reputations of the Plaintiffs." *Plaintiffs' Third Amended Original Petition* 9. These allegations do not reveal any particularly abusive conduct on the part of the Defendants. Quite the contrary, considering the charges filed with the NLRB pointed out by the Defendants and artfully ignored by the Plaintiffs, this conduct is in fact a function of the alleged discrimination itself—namely, (effectively) firing the employees for taking en masse breaks in contravention of Bechtel's directive. The Plaintiffs' state tort of intentional infliction of emotional distress cannot be adjudicated without reference to the underlying labor issue—whether Bechtel and Mobil were justified in (effectively) firing the Plaintiffs (which, according to the NLRB, they were). *See Buscemi v. McDonnell Douglas*, 736 F.2d 1348, 1352 (9th Cir.1984); *Carter v. Sheet Metal Workers'*, 724 F.2d 1472, 1478 (11th Cir.1984).

Moreover, there is a glaring *Garmon* preemption glitch for the "extreme and outrageous" element necessary to maintain Plaintiffs' claim for intentional infliction of emotional distress. Specifically, the NLRB has already held that "[t]he evidence shows, therefore, that the employees were engaged in unprotected activity for which they could be legitimately discharged." *July 31, 1998*

**15.** Moreover, Plaintiffs will simply be unsuccessful in establishing the "extreme and outrageous" element necessary to support their claims for intentional infliction of emotional distress. Plaintiffs must show the conduct of Bechtel and Mobil in firing them (or having them fired by C.A. Turner) is "so extreme as to go 'beyond all possible bounds of decency,' and [is] to be regarded as atrocious, and utterly intolerable in a civilized community.' " *McConathy*, 131 F.3d at 564 (quoting Restatement (Second) of Torts § 46, comment d (1965)). However, the NLRB has already found that the Plaintiffs were engaged in unprotected activity for which they could legitimately be discharged. No rational trier of fact could find that an employer's termination of its employees is atrocious and utterly intolerable

*NLRB Letter Attachment "A"* 3. Now, Plaintiffs ask this Court (or, more precisely, a jury) to find that the conduct of Bechtel and Mobil was "extreme and outrageous." That is, Plaintiffs ask this Court to make a finding contrary to the NLRB—that the employees were *not* engaged in unprotected activity for which they could legitimately be discharged and the conduct of Defendants Bechtel and Mobil was "extreme and outrageous" in firing them. Such a ruling by this Court would contradict the NLRB's finding; and *Garmon* analysis as refined by *Sears* cautions against this very danger.[15] Finally, although this Court sympathizes with those employees who have labor complaints, it does not (and can not) serve as a "consolation" round for those complaints thrown out by the NLRB.[16]

It is SO ORDERED.

when those employees are engaged in activity for which they can be legitimately discharged. Subtracting the legal-ese, it's simply not extreme and outrageous conduct for an employer to fire employees whose own conduct warrants their firing.

**16.** This Court realizes that Plaintiffs feel they have been wronged by Bechtel and Mobil; and it respects the position they have taken despite the ruling of the National Labor Relations Board. However, this Court also realizes that it must follow the law of *Garmon* as refined by *Sears;* and it respects the broad, preemptive jurisdiction granted to the National Labor Relations Board. In this case, the well-grounded rule of preemption must prevail.