

NUMBER 13-12-00181-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RAMIRO CASTILLO, ROGELIO GARZA JR.,
STEPHANIE V. GONZALEZ, BRENDA
SAENZ, LYNDA VALDEZ, CLEOFE
VASQUEZ, AND JUAN M. VELA,                      Appellants,

v.

BROWNSVILLE-VALLEY REGIONAL
MEDICAL CENTER, INC.,                           Appellee.

On appeal from the 357th District Court
of Cameron County, Texas.

# OPINION

Before Chief Justice Valdez and Justices Rodriguez and Garza
Opinion by Justice Rodriguez

Appellants Ramiro Castillo, Rogelio Garza Jr., Stephanie V. Gonzalez, Brenda Saenz, Lynda Valdez, Cleofe Vasquez, and Juan M. Vela challenge the trial court's granting of appellee Brownsville-Valley Regional Medical Center's (the Hospital) plea to the jurisdiction on appellants' claims under the Texas Occupations Code, Texas Health and Safety Code, and Texas Administrative Code. By one issue, appellants argue that the trial court erred in granting the Hospital's plea because the National Labor Relations Act (NLRA or the Act)—under which both appellants and the Hospital had claims pending before the National Labor Relations Board (NLRB or the Board) in connection with the same events giving rise to this case—does not pre-empt appellants' state law claims. We affirm.

## I. Background

In their petition, appellants alleged the following facts:

26. On April 3, 2011, Plaintiff Gonzalez was serving as Charge Nurse [in the Hospital's Intensive Care Unit (ICU)]. She was called away from ICU on a rapid response code to assist with a patient in a medical-surgical unit. After providing the necessary assistance to the other unit, Plaintiff Gonzalez returned to ICU to attend to her duties as Charge Nurse and for her own patients.

27. Due to Plaintiff Gonzalez being away from ICU for the rapid response code, one of her ICU patients received scheduled medication approximately one hour late, through no fault of Plaintiff Gonzalez['s].

28. A nurse in the other unit asked Plaintiff Gonzalez to remain away from ICU longer in order to accompany the patient to a CT scan. By that point in time the rapid-response patient had stabilized and Plaintiff Gonzalez was not urgently needed to accompany the patient to the CT scan. Plaintiff Gonzalez, having already been away from ICU for a dangerous period of time, thus declined to accompany the patient to the CT scan . . . .

. . . .

2

30.  . . . [The Hospital] issued Plaintiff Gonzalez a disciplinary warning for declining the request of the nurse in the other department to accompany the patient to a CT scan and instead returning to ICU . . . .

31.  By imposing the above described disciplinary action on Plaintiff Gonzalez, [the Hospital] effectuated a drastic change in hospital policy.   Never before had [the Hospital] imposed disciplinary action against an ICU nurse over the nurse's exercise of reasonable judgment in dealing with impossibly contradictory responsibilities arising from a rapid response code.   This change in policy meant than an ICU nurse serving as Charge Nurse would not have the right to use the nurse's own judgment as to when it was appropriate to return to the nurse's critical duties in ICU from a rapid response situation.   This change in policy meant, therefore, that an ICU nurse in such a situation would be forced to make an unreasonable choice between unethically leaving her critical ICU duties unattended and thus jeopardizing her nursing license, or declining to remain away from ICU and thus immediately jeopardizing her employment.

Appellants alleged that the foregoing was precipitated by the Hospital's failure to "implement and enforce a written nurse staffing policy that ensures an adequate number and skill mix of nurses are available to meet the highly acute level of patient care needed in ICU."   Appellants alleged that the Hospital's nurse staffing policy:   is "inadequate for the proper and safe care for acute care patients"; is "not based on multiple nurse and patient considerations"; is "not in accordance with evidence-based safe nursing standards"; "does not include a method for adjusting the staffing plan to provide flexibility to meet patient needs"; and "does not include a contingency plan when patient care needs unexpectedly exceed direct patient care staff resources."   Appellants also alleged that the Hospital failed "to provide for a Charge Nurse in its ICU nurse staffing plan," instead rotating "Charge Nurse assignments among the Registered Nurses [RNs] in the ICU."   As a result of this failure, in particular, appellants alleged that the rotating ICU charge nurse was responsible for his or her charge nurse duties, a full load of ICU patients, and responding to rapid response codes in other parts of the hospital.

3

Appellants allege that this policy is different from the charge nurse policies in the Hospital's other departments, where the nurse staffing policies provide for a dedicated charge nurse who has no other responsibilities.

In connection with these ICU nurse staffing policy failures, appellants then alleged the following:

> 33. The realization that good faith service as Charge Nurse would place them in jeopardy of violating proper nursing practices and endangering their patients as a condition of their employment with [the Hospital] caused [appellants] to suffer great stress and anxiety over the prospect of serving as Charge Nurses, thus rendering [appellants] emotionally incapable of serving as Charge Nurses, and therefore requiring Plaintiffs to decline Charge Nurse assignments under the Standards of Practice required of nurses by the Rules of the Texas Board of Nursing . . . .
>
> 34. Accordingly, on April 29, 2011, within 60 days before [the Hospital] terminated their employment, each [appellant] informed [the Hospital] in good faith that [the Hospital]'s practice of requiring nurses in ICU to perform Charge Nurse duties under these circumstances exposed ICU patients to unnecessary health risks . . . .
>
> 35. At the same time, each [appellant] also informed [the Hospital] in good faith that he or she could not accept Charge Nurse assignments in the future under these circumstances . . . .[1]

Appellants alleged that the next time each of them was asked by the Hospital to perform charge nurse duties, over a period between May 3 and May 6, 2011, he or she refused,

---

[1] Paragraphs 34 and 35 of the petition appear to refer to an April 28, 2011 petition submitted to Hospital administration by appellants and other nurse union members. The text of the petition follows:

> Due to recent investigations conducted by Administration against the RNs in the Intensive Care Unit, which are without proper merit and politically motivated, the RNs of the Intensive Care Unit along with our union NNOC Texas choose to no longer accept the role of relief Charge Nurse in our respective unit. We feel these investigations are unwarranted and specifically target Union Members. In addition, the responsibilities and expectations of ICU Charge Nurses are being held to an unreasonable, deliberate double standard, especially in comparison to the other Charge Nurses throughout the hospital. Such a double standard creates a hazardous work environment for the nursing staff and unnecessary health risks for the patients. Therefore the undersigned RNs will no longer take on the title/assignment of Charge Nurse.

4

citing his or her concerns about patient safety and his or her duties under the Texas Board of Nursing rules. After each appellant refused, the Hospital asked him or her to clock out and suspended his or her employment. On May 13, 2011, the Hospital terminated the employment of Vela, Garza, Vasquez, and Castillo. On May 20, 2011, the Hospital terminated the employment of Gonzalez, Valdez, and Saenz.

In connection with the foregoing events, the Hospital filed an unfair labor practice charge with the NLRB, alleging that appellants had violated the NLRA by "engaging in a partial work stoppage" without providing proper notice as required by the Act. Appellants' union also filed an unfair labor practice charge, alleging that the Hospital violated the NLRA by: denying employees their *Weingarten* rights[2]; disciplining Gonzalez because she engaged in union activities; terminating appellants' employment when they engaged in the protected, concerted activity of protesting the disciplining of Gonzalez; and refusing to bargain with the union and, instead, unilaterally changing charge nurse responsibilities and ICU discipline practices. The NLRB eventually dismissed the charge filed by appellants' union.[3] Appellants' union has appealed the

---

[2] This complaint refers to *NLRB v. J. Weingarten, Inc.*, which held that a union member's right to have a union representative present at disciplinary meetings is a protected activity under the Act. 420 U.S. 251, 260–61 (1975); *see* 29 U.S.C. §§ 157, 158(a)(1) (2006) (providing that it is an unfair labor practice for an employer to interfere with an employee's exercise of his or her right to engage in concerted activities for the purpose of mutual aid or protection).

[3] Although the Hospital represents in its brief that the NLRB has issued, or will shortly be issuing, a complaint on its unfair labor practices charge, the portion of the record cited in support of this representation does not reflect this. The cited portion of the record is the NLRB regional director's letter to appellants informing them of its administrative dismissal of their unfair labor practice charge. The letter includes the following:

> With regard to the terminations, the evidence established that the nurses who signed the petition were engaging in activity supported by the Union. Under Section 8(g) of the Act, if the labor organization does not provide the proper notice regarding a concerted refusal to work, the employees' activity is rendered unprotected by the Act. As such, the [Hospital] lawfully terminated the nurses when they refused to perform the charge nurse assignment.

dismissal.

While the NLRB charges were pending, appellants filed their state lawsuit, alleging claims under the Texas Occupations Code, the Texas Health and Safety Code, and the Texas Administrative Code. Appellants made the following claims in their petition:

1.    By suspending and terminating appellants' employment after they reported that requiring ICU charge nurses to perform both charge nurse duties and supervise a full-load of patients would create unnecessary health risks, the Hospital violated section section 301.4025 of the Texas Occupations Code and title 22, section 217.19(m) of the Texas Administrative Code, which create a whistleblower cause of action for nurses reporting a situation that he or she has reasonable cause to believe exposed a patient to substantial risk of harm as a result of failure to provide an acceptable standard of care. *See* Act of May 26, 2007, 80th Leg., R.S., ch. 803, § 9, 2007 Tex. Gen. Laws 1662, 1664–65 (amended 2011) (current version at TEX. OCC. CODE ANN. § 301.4025 (West 2012)) [4]; 22 TEX. ADMIN. CODE § 217.19(m) (2011) (Tex. Bd. of Nursing, Incident-Based Nursing Peer Review and Whistleblower Protections).

2.    When it suspended and terminated appellants' employment after they reported, in good faith, that the hospital's ICU charge nurse policy exposed patients to a substantial risk of harm, the Hospital violated section 161.134(a) of the Texas Health and Safety Code and title 25, section 133.43(b) of the Texas Administrative Code, which create a whistleblower cause of action for hospital employees reporting a violation of law. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.134(a) (West 2010); 25 TEX. ADMIN. CODE § 133.43(b) (2011) (Tex. Dep't of State Health Servs., Discrimination or Retaliation Standards). Appellants alleged that working under the hospital's policy would have violated various reporting requirements imposed on nurses by the Texas Occupations Code and Texas Health and Safety Code and various provisions of the Texas Administrative Code related to standards of care for nurses and health care providers. *See* Act of May 26, 2007, 80th Leg., R.S., ch. 803, § 9, 2007 Tex. Gen. Laws 1662, 1664–65; TEX. HEALTH & SAFETY CODE ANN. § 257.003 (West 2010) (governing hospital's nurse staffing policies); 22 TEX. ADMIN. CODE § 217.19(m); *id.* § 217.11(1)(B), (T) (2011) (Tex. Bd. of Nursing, Standards of Nursing Practice); *id.* § 217.12(1)(E) (2011)

---

Although the foregoing establishes the Board's basis for dismissing appellants' charge, it does not reference the Hospital's charge or indicate whether a complaint will be issued as to the Hospital's charge.

[4] The current version of section 301.4025 of the Texas Occupations Code incorporates amendments from the 2011 legislative session, which became effective on September 1, 2011. *See* Act of Mar. 17, 2011, 82nd Leg., R.S., ch. 877, § 4, 2011 Tex. Gen. Laws 2222, 2223–24 (to be codified at TEX. OCC. CODE ANN. § 301.4025). As a result, appellants' causes of action are governed by the prior version of the statute cited above.

(Tex. Bd. of Nursing, Unprofessional Conduct); 25 TEX. ADMIN. CODE § 133.41(o) (date) (Tex. Dep't of State Health Servs., Hospital Functions and Services—Nursing Services); *id.* § 448.201 (2011) (Tex. Dep't of State Health Servs., Standard of Care Applicable to All Providers). Appellants alleged that their protected reports, as detailed above, were the Hospital's motivating factors in suspending and terminating their employment.

3.     By suspending and terminating appellants after they refused to perform ICU charge nurse duties, the Hospital violated section 301.352 of the Texas Occupations Code, which creates a cause of action for discrimination and retaliation based on a nurse's refusal to perform duties that constitute grounds for reporting the nurse to the the Texas Board of Nursing. *See* TEX. OCC. CODE ANN. § 301.352 (West 2012); *see also* Act of May 20, 2009, 81st Leg., R.S., ch. 742, § 3, 2009 Tex. Gen. Laws 1880, 1884 (amended 2011) (current version at TEX. OCC. CODE ANN. § 301.413 (West 2012)). [5] Appellants alleged that performing those duties would have violated certain standards of care imposed on nurses by the Texas Administrative Code. *See* TEX. ADMIN. CODE §§ 217.11(1)(B), (T), 217.12(1)(E). Appellants alleged that their protected refusals to perform charge nurse duties were the Hospital's motivating factors in suspending and terminating their employment.

The Hospital filed a plea to the jurisdiction in response to appellants' state law claims, arguing that appellants' state law claims were preempted by the NLRA because: the facts set forth in appellants' petition are the same as the facts involved in the charges before the NLRB; the state law claims involve activity "arguably protected [by] or prohibited" under the Act; and the Hospital's defense to the state law claims "is grounded" in the Act. The Hospital attached to its plea the parties' NLRB charges, the NLRB's administrative dismissal of appellants' charge, and appellants' appeal of that dismissal. Although acknowledging that their lawsuit involved largely the same facts as the charges pending before the NLRB, appellants responded that their lawsuit involved issues of state law—namely, whistleblower protections enacted by the Texas Legislature—over which

---

[5] The current version of section 301.413 of the Texas Occupations Code incorporates amendments from the 2011 legislative session, which became effective on September 1, 2011. *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 877, § 6, 2011 Tex. Gen. Laws 2222, 2224–25 (codified at TEX. OCC. CODE ANN. § 301.413 (West 2012)). As a result, appellants' causes of action are governed by the prior version of the statute cited above.

the NLRB has no jurisdiction or other authority, and the NLRA therefore does not preempt those state law claims. After a hearing, the trial court granted the Hospital's plea to the jurisdiction. The trial court later denied a motion for new trial filed by appellants, and this appeal followed.

## II. Standard of Review

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.). Subject matter jurisdiction is a question of law; therefore, an appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226; *Morris*, 129 S.W.3d at 807.

The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam); *Morris*, 129 S.W.3d at 807. When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's pleadings, we accept as true all factual allegations in the pleadings to determine if the plaintiff has met its burden to plead facts sufficient to confer jurisdiction on the court. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Morris*, 129 S.W.3d at 807. We examine the pleader's intent and construe the pleadings in the plaintiff's favor. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Ramirez*, 74 S.W.3d at 867. A plea to the jurisdiction may be granted without allowing the plaintiff to amend if the pleadings

8

affirmatively negate the existence of jurisdiction. *Brown*, 80 S.W.3d at 555; *Ramirez*, 74 S.W.3d at 867. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.

### III. Discussion

By one issue, appellants argue that the trial court erred in granting the Hospital's plea to the jurisdiction because the NLRA does not preempt their state law claims. Appellants argue that the common factual basis of the NLRB charge and state law claims is irrelevant to the preemption analysis, that the proper focus is whether the two cases involve identical inquiries. Because their lawsuit involves distinct state law policies over which the NLRB has no jurisdiction, appellants argue that the inquiries are not identical and that the preemption doctrine therefore does not apply in this case.

### A. The Preemption Doctrine

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [section 7] of the National Labor Relations Act, or constitute an unfair labor practice under [section] 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

*San Diego Bldg. Trades Council, Millman's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959); *see Banfield v. Laidlaw Waste Sys.*, 977 S.W.2d 434, 437 (Tex. App.—Dallas 1998, pet. denied). The *Garmon* preemption doctrine is broad in scope and applies to any state cause of action that attaches liability to conduct that is arguably protected or prohibited by federal labor law. *See Kaufman v. Allied Pilots Ass'n*, 274 F.3d 197,

200–01 (5th Cir. 2001) (citing *Garmon*, 359 U.S. at 243; *Mobile Mechanical Contractors Ass'n, Inc. v. Carlough*, 664 F.2d 481, 487 (5th Cir. 1981)).   In determining whether state law is preempted by federal labor law, we focus on the conduct that forms the basis of the underlying claim, not the characterization of the claim under state law, and whether the controversy presented to the state court is identical to, or different from, the controversy that could have been presented to the NLRB.   *See Banfield*, 977 S.W.2d at 437; *see also Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 194 (1978) (citations omitted).

When the conduct at issue is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility, the NLRA may not preempt the state law regulating that conduct.   *See Garmon*, 359 U.S. at 243–44; *see also Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983); *Local 926, Int'l Union of Operating Eng'rs, AFL-CIO v. Jones*, 460 U.S. 669, 676 (1983).   In the latter case—where the conduct implicates a deeply-rooted state policy—"the state's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the Board's ability to adjudicate controversies committed to it by the Act . . . and the risk that the state will sanction conduct that the Act protects."   *Belknap*, 463 U.S. at 498–99; *see also Windfield v. Groen Div., Dover Corp.*, 890 F.2d 764, 767 (5th Cir. 1989).

## B.   The NLRA

Section 7 of the NLRA guarantees employees the right "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."   29 U.S.C. § 157 (2006).

Employers are prohibited from interfering with these protected, concerted rights by section 8 of the NLRA. *Id.* § 158(a)(1)–(5) (2006) (defining as unfair labor practices: actions by employers that interfere with employees' rights to protected concerted activities; retaliation against employees for engaging in protected, concerted activities; and refusing to bargain in good faith with employees' designated union representatives).

However, relevant to this case in particular, the Act requires unions that are planning a work stoppage at a health care institution to give ten days' notice of the date and time of the stoppage to the hospital. *Id.* § 158(g). This provision governs partial and full work stoppages. *See N.Y. State Nurses Ass'n*, 334 N.L.R.B. 798, 800–01 (2001) (interpreting section 158(g) to cover any concerted work stoppage, such as a concerted refusal to work overtime). Further, any union bargaining with an employer for a first contract, which were the circumstances in this case,[6] must give thirty days' notice to the Federal Mediation and Conciliation Service before engaging in a work stoppage. 29 U.S.C § 158(d)(B). If the union fails to give these requisite notices, any employee participating in the work stoppage is not engaged in a protected activity under section 7. *Id.* § 158(d).

## C.  Whistleblower Claims

Section 301.4025 of the Texas Occupations Code and title 22, section 217.19(m) of the Texas Administrative Code create a whistleblower cause of action that protects nurses who report conduct that exposes patients to substantial risk of harm as a result of care that falls below accepted standards. *See* Act of May 26, 2007, 80th Leg., R.S., ch.

---

[6] The record shows that the Hospital and nurses union were in the process of bargaining for their first contract.

803, § 9, 2007 Tex. Gen. Laws 1662, 1664–65 (current version at TEX. OCC. CODE ANN. § 301.4025); *see also* 22 TEX. ADMIN. CODE § 217.19(m). Section 161.134 of the Texas Health and Safety Code and title 25, section 133.43 of the Texas Administrative Code create a whistleblower cause of action for hospital or other health care institution employees who report violations of law or other rules and regulations governing the health care institution. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.134(a); *see also* 25 TEX. ADMIN. CODE § 133.43(b). Finally, sections 301.352 and 301.413 of the Texas Occupations Code create a discrimination and retaliation cause of action for nurses who refuse to perform duties that constitute grounds for reporting the nurse to the Texas Board of Nursing. *See* TEX. OCC. CODE ANN. § 301.352(a), (a)-(1); *see also* Act of May 20, 2009, 81st Leg., R.S., ch. 742, § 3, 2009 Tex. Gen. Laws 1880, 1884 (current version at TEX. OCC. CODE ANN. § 301.413(b)). Each of the foregoing causes of action requires a plaintiff to prove that his or her whistleblowing or other protected behavior was the cause of the employer's decision to discipline or terminate the employment of the plaintiff when it did. *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995) (establishing a general causation standard to be applied in whistleblower and similar cases: "the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did").

### D. Analysis

Appellants' argument turns on their contention that the State of Texas has a deeply-rooted interest in policing employers' discharges of whistleblowers, as evidenced by the foregoing statutes and administrative provisions. Assuming this is true, we must still balance the state's interest against the possibility that the state court action will

interfere with the Board's jurisdiction to determine issues entrusted to it under the Act and that the state court and Board proceedings will reach inconsistent results. *See Windfield*, 890 F.2d at 767.

Here, as conceded by appellants, both proceedings are based on the same operative facts. After one of the appellants, Gonzalez, was disciplined for not following orders that she believed to be contrary to the laws and regulations imposed on nurses, appellants and other union members delivered a petition to the Hospital stating that they would no longer accept the duties of rotating ICU charge nurse because they believed the nature of the ICU charge nurse position posed risks to both the health and safety of the patients and to the licenses of the nurses. Appellants do not dispute that this was a concerted action. True to that petition, the next time each of the appellants was ordered to assume ICU charge nurse duties, he or she refused. The Hospital then suspended appellants and eventually terminated their employment.

Based on these facts, the Hospital brought the following issue before the NLRB: whether the Hospital's discharge of appellants was prohibited by the Act or justified as a result of appellants' alleged failure to give the proper notice. *See* 29 U.S.C. § 158(d)(B), (g). Based on these facts, appellants also brought an issue before the NLRB: whether their protestation of Gonzalez's disciplining and subsequent collective work stoppage were protected, concerted activities under section 7 of the Act and whether the Hospital's discipline and termination of their employment was therefore prohibited under section 8. *See id.* §§ 157, 158(a)(1)–(5). And finally, based again on these same facts, appellants brought an issue before the trial court in this case: whether their reporting of what they believed to be violations of nursing regulations and refusals to accept ICU charge nurse

13

assignments duty work were protected activities under Texas whistleblower and employment discrimination statutes.

Although the policy implications are different, our focus is not the characterization of the claims. *See Banfield*, 977 S.W.2d at 437. Our focus is whether the conduct and controversy underlying the claims are identical or different. *See Sears*, 436 U.S. at 194. We believe the underlying controversies pending before both tribunals are identical: why were appellants disciplined and fired? And this inquiry involves the determination of a fundamental common element, causation.

Where a purported NLRA violation and a state law claim share a fundamental common element, the risk of state court interference with the Board's jurisdiction is "obvious and substantial." *Jones*, 460 U.S. at 683. In such a case, "the proof required for the state law claim . . . [would] overlap[] too much with that [required] for [the] unfair labor practice charge" and the "risk of inconsistent results between the state court and the NLRB" would, accordingly, be too high. *See Windfield*, 890 F.2d at 770 (analyzing *Jones*, 460 U.S. at 682–83). In its plea to the jurisdiction, the Hospital asserted that its defense to appellants' state law claims is grounded in the Act, i.e., that its firing of appellants was justified because they failed to give the required notice of their collective work stoppage. *See* 29 U.S.C. § 158(d)(B), (g). Whether the Hospital was justified in suspending appellants and terminating their employment based on their failure to give the notice required under the Act is a question for the Board. Even though appellants claim in their state lawsuit that their firings were motivated by their whistleblowing activities, the pleadings show that their firings occurred at the same time and in the context of their collective work stoppage. So to prove causation—that their whistleblowing or other

14

protected activities were the cause of the Hospital's decision to terminate appellants when it did, *see Hinds*, 904 S.W.2d at 636—appellants would be required to respond to the Hospital's defense under the Act. Allowing the trial court to take up the issue of proper notification under the Act in its determination of causation in appellants' state law actions would interfere with the Board's exclusive jurisdiction to settle issues of federal labor law. *See Garmon*, 359 U.S. at 245; *Kaufman*, 274 F.3d at 200–01 (holding that the preemption doctrine is broad in scope and should be applied to any state law cause of action that applies to conduct arguably covered by the Act). The evidence before us shows that appellants' challenge of the regional director's dismissal is still pending, and no complaint has been issued on the Hospital's charge. *See Kirwan*, 298 S.W.3d at 622 (permitting the court to consider relevant evidence when jurisdictional facts are at issue). Letting the state law claims to go forward would have permitted appellants to relitigate the operative facts of the charges already pending before the Board and, therefore, posed too high a risk of inconsistent adjudications. *See Windfield*, 890 F.2d at 767, 770; *see also Jones*, 460 U.S. at 682–83. Preemption was the correct answer in this case.

Based on the pleadings and evidence before the trial court, we conclude that the court did not err in determining that appellants' state law claims were preempted by federal labor law. *See Morris*, 129 S.W.3d at 807; *see also Kirwan*, 298 S.W.3d at 622. And because the causes of action pleaded by appellants involve an identical inquiry as the controversy before the Board, we also conclude that appellants' pleadings affirmatively negate the existence of jurisdiction; in other words, we see no way appellants could amend their pleadings to add whistleblower or other employment discrimination claims that would not be preempted. *See Brown*, 80 S.W.3d at 555. The

trial court correctly granted the Hospital's plea to the jurisdiction and dismissed appellants' case with prejudice.    Appellants' issue is overruled.

## IV.    Conclusion

We affirm the judgment of the trial court.


NELDA V. RODRIGUEZ
Justice

Delivered and filed the 19th
day of December, 2013.