COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RICARDO DE LOS SANTOS, | § | No. 08-19-00113-CV |
| Appellant, | § | Appeal from the |
| v. | § | 207th District Court |
| HELDENFELS ENTERPRISES, INC., | § | of Hays County, Texas |
| Appellee. | § | (TC# 16-2635) |

# **O P I N I O N**

This appeal addresses the question of whether the National Labor Relations Board (NLRB) has preemptive jurisdiction over Ricardo De Los Santos's disability discrimination and retaliation causes of action brought in state court. De Los Santos filed suit alleging disability discrimination and retaliation under the Texas Commission on Human Rights Act (TCHRA) against his employer, Heldenfels Enterprises, Inc. (HEI). HEI filed a plea to the jurisdiction in which it asserted that the alleged wrongful conduct that De Los Santos raised in his petition brought the actions within the jurisdiction of the NLRB which enforces the National Labor Relations Act (NLRA). The paradox of the issue is that the employer, HEI, is confessing the possibility that it violated the NLRA, thus giving the NLRB exclusive jurisdiction, while the employee, De Los Santos, disclaims any relief under the NLRA.

1

The trial court granted HEI's plea to the jurisdiction and dismissed both of De Los Santos's causes of action with prejudice. Based on the record, we affirm as to the retaliation claim with one modification, but reverse as to the disability discrimination claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From De Los Santos's Original Petition, we glean the following allegations. De Los Santos worked as the supervisor of the receiving department at HEI. During his employment, De Los Santos advised HEI that he suffered from spinal arthritis. In 2014, his doctor prescribed hydrocodone for the condition, and De Los Santos advised HEI that he had begun taking the medication. De Los Santos regularly provided "monthly copies of [his] prescribed medication" to HEI management and took multiple drug tests during his employment with positive results for hydrocodone. De Los Santos continued performing work duties at HEI and claims that taking his medication neither affected his ability to work safely nor resulted in the issuance of any disciplinary warnings or reprimands for his performance.

In January 2016, Abel Sotelo--another HEI employee--presented De Los Santos a petition advocating that employees should receive more vacation time from HEI. De Los Santos considered Sotelo's vacation petition to be inappropriate and delivered the petition to HEI's human resource director. Sotelo admitted that he was the only person responsible for circulating the vacation petition, and indeed, his is the only signature on the petition. However, HEI then suspended both Sotelo and De Los Santos for "disruption in the workplace." Approximately three days later, HEI staff met with Sotelo and De Los Santos. HEI allowed Sotelo to return to work but conditioned De Los Santos's return to work on his "being free of physical work restrictions" and cessation of narcotic pain medication. During the meeting, an HEI staff member allegedly told De Los Santos that he "was getting old due to arthritis." HEI's Human Resources Manager

2

wrote a letter to De Los Santos's doctor advising the doctor that it was in De Los Santos's best interest to switch to a non-narcotic medication. According to the letter, De Los Santos would not be permitted to return to work if he had any type of work restriction or required narcotics to manage his pain.

De Los Santos filed a charge with the Equal Employment Opportunity Commission (EEOC) asserting discrimination based on disability and retaliation. In his charging document, De Los Santos set out a thumbnail summary of the facts recited above, including that he had informed HEI management about the vacation petition, he had been suspended, and HEI's reason for its adverse action was "[p]rescribed medication creates a safety issue." He concluded that HEI had discriminated against him based on disability in violation of the Americans with Disabilities Act of 1990 (ADA), and had retaliated against him in violation of § 704(a) of Title VII of the Civil Rights Act of 1964.

After receipt of a right to sue notice from the EEOC, De Los Santos filed his petition in state court asserting a TCHRA disability discrimination and retaliation claim. De Los Santos's petition only alleges state-based disability-discrimination and retaliation causes of action under the TCHRA and only seeks to recover damages available to him under the TCHRA.

HEI filed a plea to the jurisdiction in which it asserted that the NLRB has exclusive jurisdiction to address an employee's claims that are (1) arguably protected employee-activities, or (2) arguably prohibited employer-conduct that interferes with protected activities under the NLRA. The plea attached De Los Santos's deposition where he stated his belief that HEI's discriminatory and retaliatory acts were "triggered" by his delivery of Sotelo's petition to HEI management. HEI asserted that De Los Santos's act of delivering Sotelo's petition to HEI management was a protected activity governed by the NLRA. HEI argued that it does not matter

3

that De Los Santos only brought his causes of action under the TCHRA because the employer's acts arguably constitute a violation of the NLRA which the NLRB is intended to address. It further contended that HEI's motive for its action and whether it was based on Sotelo's petition are issues to be addressed exclusively by the NLRB. Following a non-evidentiary hearing, the trial court granted HEI's motion, and dismissed the case with prejudice.

## II. DISCUSSION

In a single issue, De Los Santos complains that the trial court erred in granting HEI's plea to the jurisdiction because he has asserted disability discrimination and retaliation complaints "solely under Texas law to the exclusion of any [f]ederal law."

### A. Standard of Review

HEI raised the preemption issue through a plea to the jurisdiction, which challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Castillo v. Brownsville-Valley Reg'l Med. Ctr., Inc.*, 421 S.W.3d 263, 269 (Tex.App.--Corpus Christi 2013, no pet.) (NLRA preemption raised through plea to the jurisdiction). We review de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226.

A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a jurisdictional plea challenges the pleadings, we determine whether the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction. *Id.* In doing so, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the plaintiff's pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one

4

of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id*. at 226-27. If the plaintiff's pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

If the plea challenges the existence of jurisdictional facts, we consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771. When the jurisdictional plea challenges the existence of jurisdictional facts with supporting evidence, the standard of review mirrors that of a traditional summary judgment. *Id*.

## B. Applicable Law

### 1. The NLRA preemption doctrine

In 1935, Congress passed the National Labor Relations Act to encourage collective bargaining and protect the exercise of workers' "freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C.A. § 151 (West 2020). The NLRA itself contains no express provision preempting state laws, and it regulates in an area of law traditionally regulated by the states; accordingly any NLRA preemption analysis starts "with the basic assumption that Congress did not intend to displace state law." *Building and Constr. Trades Council of Metro. Dist. v. Associated Builders and Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993), *quoting Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

Nonetheless, courts have found state laws impliedly preempted by conflict with the NLRA on the ground that the state law stands "as an obstacle to the accomplishment and execution of the

5

full purposes and objectives" of Congress.[1]  *See, e.g.*, *Livadas v. Bradshaw*, 512 U.S. 107, 120, 134-35, (1994) (holding a state policy declining to compel payment of wages immediately upon an employee's discharge was preempted by NLRA); *Ex parte Twedell*,  309 S.W.2d 834, 842-45 (Tex. 1958) (holding state court was without jurisdiction to enjoin picketing of business).  But when addressing preemption claims, "our sole task is to ascertain the intent of Congress."  *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987).  "[P]re-emption is not to be lightly presumed."  *Id*. at 281.

The Supreme Court has articulated two doctrines for determining whether the NLRA preempts state regulations or state causes of action.  *See Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983) (recognizing two NLRA preemption doctrines).  The first preemption framework, announced in *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 243-45 (1959), governs our analysis.[2]  In *Garmon*, the Supreme Court declared that state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably protected or prohibited by the NLRA.  *Belknap, Inc.*, 463 U.S. at 498.

Under *Garmon*, a court first determines whether the conduct that the State seeks to regulate or to make the basis of liability is *actually* or *arguably* protected or prohibited by the NLRA.

---

[1] Federal preemption turns on legislative intent, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992), and that intent can be found in three ways:

> (1) expressly, by a federal law specifically preempting state law; (2) impliedly, by the scope of a federal law or regulation indicating Congress intended the federal law or regulation to exclusively occupy the field; or (3) impliedly, by the state law conflicting with a federal law or regulation to the extent it is impossible to comply with both or by the state law obstructing Congress's objectives as reflected by the federal law.

*BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 537 (Tex. 2011).

[2]The second NLRA preemption doctrine is set out in *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976), and proscribes state regulation and state-law causes of action in areas that Congress intended to be unregulated, that is, "conduct that was to remain a part of the self-help remedies left to the combatants in labor disputes."  *Belknap, Inc.*, 463 U.S. at 499.  No claim is made that *Machinist* preemption is raised on our facts.

*Garmon*, 359 U.S. at 245. If so, the applicable state law proceeding is ordinarily preempted. But the "*Garmon* guidelines [are not to be applied] in a literal, mechanical fashion." *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978); *see also Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 302 (1977) (holding that inflexible application of the preemption doctrine was to be avoided, "especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme."). Accordingly, preemption is not appropriate when the conduct at issue is only a "peripheral concern" of the NLRA or "touch[es] on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," it could not be inferred that Congress intended to deprive the State of the power to act. *Garmon*, 359 U.S. at 243-244. Under this later analysis, a court must balance any harm to the regulatory scheme as established by Congress (either through negating the NLRB's exclusive jurisdiction or creating conflicting substantive rules) against the importance of the State's interest in the asserted cause of action to the protection to its citizens. *See Sears*, 436 U.S. at 188-89; *Local 926, Int'l Union of Operating Engineers, AFL-CIO v. Jones*, 460 U.S. 669, 675-76 (1983).[3]

---

[3] Some examples better explain the test. In *Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.)*, 346 U.S. 485 (1953) a lower court enjoined peaceful organizational picketing by applying provisions of the Pennsylvania Labor Relations Act. That action was error, however, because the union conduct fell within the jurisdiction of the NLRB to prevent unfair labor practices. The Court noted that because Congress had "taken in hand this particular type of controversy . . . [i]n language almost identical to parts of the Pennsylvania statute," the state court could not "adjudge the same controversy and extend its own form of relief." *Garner*, 346 U.S. at 488-89. Conversely, in *Farmer*, a union member sued his own union for intentional infliction of emotion distress over claims that the union had engaged in a campaign of personal abuse and harassment against him. *Farmer v. United Bhd. Of Carpenters & Joiners of America, Local 25*, 430 U.S. 290, 292 (1977). One part of that claim was that the union discriminated against him through union-hiring-hall referrals. That kind of discrimination was arguably prohibited by Section 8 of the NLRA and an unfair labor practice charge could have been filed with the Board. Nonetheless, the Court permitted the State action to proceed, because of (1) the significant state interest in protecting citizens from the challenged conduct, and (2) the tort claim entailed little risk of interference with the regulatory jurisdiction of the NLRB. *Id.* at 302-03; *see also Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 197-98 (1978) (holding state court had jurisdiction to issue injunction preventing a union from trespassing on private

7

We note, however, that neither before the trial court, nor on appeal, does either party argue the back-end of the *Garmon* test (or what HEI refers to as the exceptions). That is, De Los Santos does not claim that the NLRA implications of this case are "peripheral," nor that the Texas interest in enforcing the TCHRA counterbalances the impact that hearing this case might have on federal labor law. And even though we liberally construe issues raised on appeal, it is not our task to advance arguments or issues that the parties have not raised. *Cf. San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209 (Tex. 1990) (court of appeals should not raise grounds not asserted by the parties) *with Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) ("[P]oints of error should be liberally construed to fairly and equitably adjudicate the rights of litigants."). Accordingly, while we resolve the issues advanced by the parties with a broad brush, the back-end of the *Garmon* test is not fairly included in any of the issues raised, and is not a part of our analysis.

### 2. Protected activity and unlawful labor practices under the NLRA

*Garmon* addresses conduct arguably *protected by* (Section 7) and arguably *prohibited by* (Section 8) of the NLRA. *Garmon*, 359 U.S. at 245. Section 7 of the NLRA--codified at 29 U.S.C.A. § 157--declares that:

> [e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C.A. § 157 (West 2020) ("Right of employees as to organization, collective bargaining, etc.").

---

property to picket given that there was only an arguable basis for the NLRB jurisdiction over trespassory picketing, and state's interest in preventing trespass.

With certain provisos omitted here, Section 8 of the NRLA--codified at 29 U.S.C.A. § 158--establishes that it is an unfair labor practice for an employer:

(1)    to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 157 of this title;

29 U.S.C.A. § 158(a)(1)(West 2020) (Section 157, being the bill's reference to Section 7 of the NLRA).

## C. Application

HEI urges De Los Santos's factual allegations arguably implicate Sections 7 and 8 of the NLRA. De Los Santos handed a petition seeking additional vacation time to his employer. When he did so, the employer inquired about union activity, and later accused him of becoming "involved in a lot of employee's affairs." He was escorted off the worksite "for disruption of work." Even though De Los Santos was opposed to the idea behind the petition, HEI argues that its mistaken belief if translated into an adverse employment decision would be addressable under the NLRA. In that case, the employer would have penalized De Los Santos because it believed, even if erroneously, that he was acting in concert for the mutual benefit of the workers.

De Los Santos asserted two distinct claims--disability discrimination and retaliation. We analyze each under the *Garmon* decision and its progeny. At the outset, however, we dispense with one argument that De Los Santos globally advances as to each claim. He notes that there is no suggestion in the record that De Los Santos is anything other than a nonunion employee. There is no evidence that De Los Santos was a member of a labor union during his employment, nor is there any evidence that HEI and its employees were subject to a collective bargaining agreement. However, the absence of these facts do not preclude a finding that an employee has engaged in concerted activities, or that a nonunion employer has engaged in unfair labor practices under the NLRA. *See NLRB v. Washington Aluminum Co*., 370 U.S. 9, 12-13, 16-18 (1962) (upholding

9

NLRB's findings that a walkout by employees who were unrepresented by a bargaining representative was a concerted activity that grew out of a "labor dispute" and was therefore protected conduct under Section 7). Simply because De Los Santos might not be a union member, or that the issue was not directly related to union activity, does not end our inquiry.

### 1. *De Los Santos's disability claim under the TCHRA*

De Los Santos asserted a claim for disability discrimination under Section 21.051 of the TCHRA. That section provides that an employer commits an unlawful employment practice if, because of disability, the employer:

(1)  fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2)  limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX.LAB.CODE ANN. § 21.051. The factual allegations underpinning the claim are that HEI refused continued employment to De Los Santos because of the arthritic condition in his spine. De Los Santos contends that he is physically capable of performing work and was qualified for the head of HEI's receiving department, a position he held for almost four years, and for which he had received positive performance evaluations. He claims that HEI's act of indefinitely suspending him until he was free of both work restrictions and the prescribed hydrocodone treatment subjected him to discriminatory conditions and that he was constructively discharged.

De Los Santos attacks the trial court's decision for several reasons. First, he notes that federal courts have held that discrimination claims filed under the federal disability discrimination laws are not preempted by the NLRA. *See, e.g.*, *Smith v. Nat'l. Steel & Shipbuilding Co.*, 125 F.3d 751, 755 (9th Cir. 1997) *cert. denied*, 523 U.S. 1094 (1998) (NLRA did not preempt federal ADA

10

claim); *cf. Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1445 (5th Cir. 1992) (NLRA did not preempt federal age discrimination claims under ADEA). And undoubtedly, the TCHRA is modeled after and furthers the same policies as the federal anti-discrimination statutes. *See Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771 (noting that the Texas Legislature modeled the TCHRA on Title VII of the Civil Rights Act of 1964); *Texas Dep't of Crim. Justice. v. Flores*, 555 S.W.3d 656, 663 (Tex.App.--El Paso 2018, no pet.) (TCHRA parallels federal protections under the ADA). But it does not necessarily follow that simply because the NLRA does not displace the federal ADA, that it similarly cannot displace the TCHRA. *Garmon* preemption is based on the Supremacy Clause to the United States Constitution. How preemption might apply when comparing a federal statute to a federal statute would be different than how it might apply to comparing a federal statute to a state statute. *See Smith*, 125 F.3d at 755; *Willis v. Pacific Maritime Ass'n*, 244 F.3d 675, 684 (9th Cir. 2001) ("A preemption analysis is simply inapplicable where the conflict is between two federal statutes, such as the ADA and the NLRA, rather than between a federal and a state law.").

De Los Santos also argues that the plaintiff is the master of his or her pleadings, and that he has only asserted a state law claim. As for being the master of the pleading, the argument is only partly correct. To be sure, when the underlying facts would allow an aggrieved employee to assert a federal or a state-law claim, generally, the plaintiff can choose to assert only the state law claim and avoid removal jurisdiction based on an unasserted federal cause of action. *See Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995) ("However, it is also plain that when both federal and state remedies are available, plaintiff's election to proceed exclusively under state law does not give rise to federal jurisdiction."); *Christiason v. Merit Texas Properties, L.L.C.*, 393 F.Supp.2d 435, 436 (N.D. Tex. 2005) (so holding for age and disability claims brought only under

11

Texas law). But NLRA preemption is a bit more nuanced. Under the *Garmon* line of cases, a court would look to whether the state-law claim presents a controversy that is identical to "the claim that could have been, but was not, presented to the labor board." *Sears, Roebuck & Co.*, 436 U.S. at 188. We would look to the facts that could potentially be raised before the NLRB. But here the record gets murky. De Los Santos's pleading does not allege that the disability discrimination was motivated by the issue of the petition. Rather, the presentation of the petition might have only been an event that brought his medication issue to a head. And even if the pleading is unclear, under our standard of review for pleas to the jurisdiction, we are required to remand to see if De Los Santos could plead a claim separate and apart from the presentation of the petition. *Miranda*, 133 S.W.3d at 226-27.

HEI of course went beyond the pleadings and offered De Los Santos's deposition in support of its plea to the jurisdiction. But most of the questions and answers that the parties highlight focus on the retaliation and not the disability discrimination claim. The testimony could be read, as HEI does, that the retaliation was "triggered" by De Los Santos handing in the petition:

Q. What does "triggered mechanism on retaliation" mean, or what did you--what did it mean? Why did you put it in there?

A. I believe that the--that the petition triggered the--the mechanism of the retaliation and what transpired. That--that's what triggered everything.

But De Los Santos also seemingly walks back that claim, asserting that management set aside the petition issue and focused on his health issue when it prevented him from returning to work:

Q. [T]his is your--your spinal arthritis; is that correct?

A. Correct.

. . .

Q. Well, sitting here today, what do you understand your claims to be then?

A. Well, for discrimination and--under the American Disabilities Act and--and retaliation.

12

Q.  Okay.  Retaliation for what; do you know?

A.  I--due to--I need to elaborate on this, so . . .

Q.  Sure.

A.  I think all this was triggered by the petition.

Once I turned in the petition and there was no--I was--that day that I turned in the petition, I was suspended for disruption in the workplace.

I don't see how I was disrupting anything.  I was stopping a process from-- from hindering the company.

And they--from there I was escorted, and when I went back Monday--they told me to go back Monday--Adam Mainka, I was walking into his office and he told me, ["]Now we're going to deal with your back.["]

So that specifically tells me that *he put the petition . . . aside* and--and he was coming after me because of my back (emphasis supplied).

We review a plea to the jurisdiction with an evidentiary record as we might a summary judgment. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771.  "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor."  *Id.*  If the evidence is unclear, as it appears here, the causative event is not clearly defined by the factual record, and the motion should be denied.

HEI urges, however, that we follow *Castillo v. Brownsville-Valley Reg'l Med. Ctr., Inc.*, 421 S.W.3d 263, 270 (Tex.App.--Corpus Christi 2013, no pet.), citing it for the proposition that the NLRB is the appropriate entity to resolve any disputed causation questions.  In *Castillo*, a group of nurses were terminated for refusing to follow a hospital policy that dictated when they needed to leave the ICU to assist patients in other parts of the hospital.  The issue surfaced when an ICU charge nurse was disciplined for refusing to assist with a CT scan because she felt she needed to attend to her ICU duties.  *Id.* at 265.  A group of other nurses petitioned the hospital, claiming the policy exposed their ICU patients to health risks.  *Id.* at 266.  When those nurses subsequently refused to follow the policy, they were terminated from employment.  The hospital

13

filed an unfair labor practice charge before the NLRB, claiming the nurses participated in an illegal partial work stoppage because the nurses' union failed to provide timely notice of the stoppage as required by federal labor law. The union filed its own unfair labor practice charge before the NLRB, claiming a violation of Sections 7 and 8 of the NLRB. *Id.* at 267. At the same time, the nurses filed a state court lawsuit asserting state-law claims, including that their actions were protected under the Texas Occupations Code and administrative rules protecting whistleblowers and the independence of nursing judgment. *Id.* at 267-68. The trial court dismissed that lawsuit on preemption grounds, which was affirmed by the court of appeals.

We read *Castillo* as holding that when the NLRB case and state-law case share a common element to be decided by applying the same facts, the state court should defer to avoid the possibility of a conflict in resolving the key factual issues. In *Castillo*, for instance, the nurses' union was arguing to the NLRB that the nurses were terminated for exercising their Sections 7 and 8 rights. Conversely, the hospital was arguing that the lack of proper notice of a work stoppage forfeited those rights. In the state law proceeding, the nurses would need to argue that they were terminated for complaining (whistleblowing) about the new policy, and then refusing to follow it. Although the cause of the termination might be stated differently in both proceedings, the causation decision would be decided by evaluating the same group of facts, which overlapped between the two ongoing proceedings. *See also Banfield v. Laidlaw Waste Sys.*, 977 S.W.2d 434, 437 (Tex.App.--Dallas 1998, pet. denied) (workers' state-law claim that they were wrongfully discharged in violation of the Texas Right to Work Law rested solely upon conduct which was also protected by the NLRA, and the claims were preempted); *Chaulk Services, Inc. v. Massachusetts Comm'n. Against Discrimination*, 70 F.3d 1361, 1365 (1st Cir. 1995) (very same

14

conduct that was the subject of an NLRB proceeding formed the basis of a later filed sexual discrimination suit, and was accordingly preempted).

While we do not disagree with the holding in *Castillo*, we simply think it inapplicable in this case. The record here could support that De Los Santos was subjected to two adverse employment actions. The first was the three-day suspension that was brought on by presenting the petition to management. The second was a decision made when De Los Santos was brought in after three days and told to obtain an unrestricted medical release and to discontinue hydrocodone pain medication. Those two employment actions while occurring sequentially in time, are not necessarily dependent on each other.

And even if they are connected, we strain to see how the NLRB would resolve the causation issue. Before the NLRB, De Los Santos would be arguing that he was terminated because of his disability, which the NLRB has no jurisdiction over, and would presumably dismiss if they made such a finding. Conversely, HEI would be arguing the termination was for a possible violation of the NLRA--based on the presentation of the petition--which would subject it to potential liability. Unlike *Castillo* where the parties before the NLRB were clearly adverse and the issue was cleanly drawn, the dispute here would be placing the proverbial square peg into a round hole.

For preemption purposes, we look at each distinct claim asserted by De Los Santos. *See, e.g.*, *St. John v. International Ass'n of Machinists and Aerospace Workers*, 139 F.3d 1214 (8th Cir. 1998) (remand for consideration of whether certain claims are preempted, and whether prophylactic trial measures could exclude consideration of NLRA based claims). Based either on the ambiguity in the pleading, or the ambiguity in the testimony as to the cause for the termination, we reverse the trial court's dismissal of the disability discrimination claim and remand it for trial.

*2. De Los Santos's retaliation claim under the TCHRA*

15

De Los Santos also brought a claim for retaliation. Under Section 21.055 of the TCHRA, it is unlawful for an employer to retaliate or discriminate against a person who, under Chapter 21:

(1)    opposes a discriminatory practice;

(2)    makes or files a charge;

(3)    files a complaint; or

(4)    testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

TEX.LAB.CODE ANN. § 21.055. "A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable even when the other is not." *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 763-64. The retaliation claim focuses on the employer's response to an employee's protected activity. *Id.*

De Los Santos's last amended petition alleges retaliation this way:

Plaintiff De Los Santos's employment became subject to certain discriminatory conditions, to which Plaintiff opposed. Plaintiff alleges that his termination, all or in part, was due to retaliation by Defendant for opposing a disability discrimination, in violation of the Texas Labor Code §21.001 *et seq.*

The petition does not define what it means by opposing a "disability discrimination." In addition to the testimony we set out above, De Los Santos gave this further description of his retaliation claim:

Q.    Do you believe that HEI had retaliated against you?

A.    I believe Heldenfels Enterprises retaliated against me.

Q.    Okay. How as of January 21st?

A.    As of January 21st because of a situation of my arthritis and because of how Adam Mainka manic [sic] approached me.

He wasn't--he shouldn't have brought out the way he brought it out. Now we're going to deal with your back.

I mean, he was like, Hey, I'm not letting you go. (form objections omitted)

HEI argues that there was no event, other than delivering the petition, upon which the retaliation claim could be based. Up until that point, De Los Santos had not opposed a discriminatory

16

practice, filed any charge, filed any complaint, or testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. Accordingly, HEI claims that the delivery of the petition is the only event upon which the retaliation claim could be based, and the delivery of the petition arguably raises a Section 7 and Section 8 claim under the NLRA. We agree.

Moreover, the competing retaliation claims would more classically fit the rationale for preemption. If the retaliation claim was asserted before the NLRB and in state court, the outcomes could conflict. Both venues would have to evaluate the same set of facts. Accordingly, the portion of the trial court's judgment dismissing the retaliation claim is affirmed, but we agree with De Los Santos that the dismissal should be without prejudice.

The trial court dismissed the entire suit with prejudice. HEI defends that procedure by citing several cases where pleas to the jurisdiction were granted through a dismissal with prejudice. But those cases involve claims dismissed because of sovereign immunity, when by definition, no further claim in another forum is possible. *See Univ. of Texas M.D. Anderson Cancer Ctr. v. Eltonsy*, 451 S.W.3d 478, 481 (Tex.App.--Houston [14th Dist.] 2014, no pet.); *Goss v. City of Houston*, 391 S.W.3d 168, 175-76 (Tex.App.--Houston [1st Dist.] 2012, no pet.). But "[i]n general, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect." *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). And if the purpose of the plea to the jurisdiction is to dismiss that claim so that it could be brought in the proper forum, that purpose is thwarted by burdening the claim with the preclusive effect of a dismissal with prejudice. Accordingly, we affirm the dismissal of the retaliation claim, but reform the dismissal to be without prejudice to refiling it before the NLRB.

17

## III. CONCLUSION

We reverse the judgment of the trial court as to the disability discrimination claim and remand that claim to the trial court for proceedings not inconsistent with this opinion. We affirm the dismissal of the retaliation claim, but reform the dismissal to be without prejudice to refiling before the National Labor Relations Board.

JEFF ALLEY, Chief Justice

August 18, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.